No. 25-1078

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

LYNNEL COX, as administrator of the Estate of Shayne R. Stilphen,

*Plaintiff - Appellant*,

v.

ISMAEL ALMEIDA; PAUL MICHAEL BERTOCCHI; CATIA FREIRE; BRIAN PICARELLO,

*Defendants - Appellees*,

BOSTON POLICE DEPARTMENT; JOHN/JANE DOES 1-2; DAVID MARSHALL; CITY OF BOSTON,

*Defendants*.

On Appeal from the United States District Court
for the District of Massachusetts, No. 1:22-cv-11009 (Stearns, J.)

### Plaintiff-Appellant's Opening Brief

Jessie J. Rossman (No. 1161236)
Adriana Lafaille (No. 1150582)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org

Robert Frederickson III (No. 1207720)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
rfrederickson@goodwinlaw.com

Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

Rohiniyurie Tashima (No. 1215338)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
rtashima@goodwinlaw.com

May 29, 2025

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................1

Jurisdictional Statement ......................................................................6

Statement of the Issues........................................................................7

Statement of the Case..........................................................................7

I.     The dangers of the opioid epidemic. ...........................................7

II.    Mr. Stilphen died from an opioid overdose while in BPD custody. ..............9

     A.    Mr. Stilphen displayed symptoms of worsening opioid intoxication while in D-4's holding cell and throughout the booking process...................................................9

     B.    BPD officers left Mr. Stilphen alone in a cell where he would overdose and die..............................................11

     C.    Officer Doolan interceded when he conducts his first cell check......17

III.   The District Court instructed the jury under the subjective deliberate indifference standard, and the jury found in favor of the defendant-officers. .......................................18

Summary of Argument ......................................................................20

Standard of Review............................................................................24

Argument............................................................................................25

I.     The objective deliberate indifference test applies to Ms. Cox's claim that the defendant-officers violated Mr. Stilphen's Due Process right to adequate medical care in response to a serious medical need.................25

     A.    Supreme Court precedent establishes that an objective deliberate indifference standard applies to all Due Process claims brought by pretrial detainees. .................26

     B.    The majority of appellate courts to have considered the issue have applied an objective deliberate indifference standard to inadequate medical care claims brought under the Due Process Clause. ..............................................30

# TABLE OF CONTENTS
## (continued)

**Page**

    C.    This Court can and should adopt an objective deliberate indifference standard for inadequate medical care claims brought under the Due Process Clause by pretrial detainees. ............36

        i.    This Court is not bound by pre-Kingsley decisions. .....37

        ii.    This Court is not bound by post-*Kingsley* decisions. .......................................................................40

II.    The District Court's failure to instruct the jury under the objective deliberate indifference standard was prejudicial. ..........................................44

    A.    All four defendant-officers were trained on the risks and prevalence of opioid intoxication and overdose and how to respond. .......................................................................46

    B.    The evidence presented to the jury demonstrates that an objectively reasonable officer would have recognized and acted in response to Mr. Stilphen's serious risk of harm. ...........................48

        i.    Officer Almeida. ...........................................................49

        ii.    Officer Picarello. ..........................................................51

        iii.    Officers Bertocchi and Freire. .....................................52

    C.    The prejudicial impact of the jury instruction. ...................54

Conclusion ...............................................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alderson v. Concordia Parish Corr. Facility*,
848 F.3d 415 (5th Cir. 2017) .......................................................22, 33

*Bell v. O'Reilly*,
972 F.3d 21 (1st Cir. 2020).................................................................45

*Bell v. Wolfish*,
441 U.S. 520 (1979)...................................................................20, 27

*Brawner v. Scott Cnty.*,
14 F.4th 585 (6th Cir. 2021) ...................................2, 21, 34, 35, 36, 40

*Castro v. City of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) .............................................21, 31, 32

*Costa-Urena v. Segarra*,
590 F.3d 18 (1st Cir. 2009)...........................................24, 44, 54, 55

*Cousins v. Sec'y of the U.S. Dep't of Transp.*,
880 F.2d 603 (1st Cir. 1989)...............................................................41

*Dang ex rel. Dang v. Sheriff, Seminole Cnty.*,
871 F.3d 1272 (11th Cir. 2017) .................................................22, 33

*Darnell v. Pineiro*,
849 F.3d 17 (2d Cir. 2017) ................................................21, 31, 32

*Estelle v. Gamble*,
429 U.S. 97 (1976)..............................................................26, 27, 35

*Eulitt ex rel Eulitt v. Me. Dep't of Educ.*,
386 F.3d 344 (1st Cir. 2004)..............................................................41

*Farmer v. Brennan*,
511 U.S. 825 (1994)............................................................1, 27, 35

*Gately v. Massachusetts*,
2 F.3d 1221 (1st Cir. 1993)..........................................................5, 42

*Gordon v. Cnty. of Orange*,
  888 F.3d 1118 (9th Cir. 2018) ......................................................2, 21, 30, 31, 32

*Hulon v. City of Lansing*,
  2025 WL 817492 (6th Cir. Mar. 14, 2025) ........................................................30

*Ira Green, Inc. v. Military Sales & Serv. Co.*,
  775 F.3d 12 (1st Cir. 2014).................................................................................24

*Johnson v. United States*,
  559 U.S. 133 (2010)............................................................................................39

*Kimbrough v. United States*,
  552 U.S. 85 (2007)..............................................................................................38

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015).................................... 1, 2, 4, 6, 21, 28, 29, 34, 36

*Kingsley v. Hendrickson*,
  801 F.3d 828 (7th Cir. 2015) ...........................................................................6, 45

*L.A. Cnty. v. Castro*,
  137 S. Ct. 831 (2017)..........................................................................................34

*La Plante v. Am. Honda Motor Co., Inc.*,
  27 F.3d 731 (1st Cir. 1994)....................................................................5, 6, 44, 46

*Lara-Grimaldi v. Cnty. of Putnam*,
  132 F.4th 614 (2d Cir. 2025) ........................................................2, 21, 30, 31, 45

*Leavitt v. Corr. Med. Servs.*,
  645 F.3d 484 (1st Cir. 2011)...............................................................................25

*Miranda v. Cnty. of Lake*,
  900 F.3d 335 (7th Cir. 2018) ........................................................2, 21, 30, 31, 32

*Miranda-Rivera v. Toledo-Dávila*,
  813 F.3d 64 (1st Cir. 2016).......................................................................4, 22, 23

*Ruiz-Rosa v. Rullan*,
  485 F.3d 150 (1st Cir. 2007)...............................................................................25

v

*Scott Cnty. v. Brawner*,
   143 S. Ct. 84 (2022)............................................................34

*Short v. Hartman*,
   87 F.4th 593 (4th Cir. 2023) ...................................2, 4, 21, 22, 25, 27, 30-36, 40

*Strain v. Regalado*,
   977 F.3d 984 (10th Cir. 2020) .....................................22, 33, 34, 35, 36

*Thompson v. Howry*,
   2024 WL 4350214 (D.N.H. Sept. 30, 2024).......................................41

*United States v. DiPina*,
   178 F.3d 68 (1st Cir. 1999)........................................................42

*United States v. Holloway*,
   630 F.3d 252 (1st Cir. 2011)..............................................4, 37, 38, 39

*United States v. Rodriguez*,
   527 F.3d 221 (1st Cir. 2008)......................................... 22, 37-40

*United States v. Unger*,
   915 F.2d 759 (1st Cir. 1990)......................................................42

*Universitas Educ., LLC v. Granderson*,
   98 F.4th 357 (1st Cir. 2024).......................................................24

*Webster v. Fall*,
   266 U.S. 507 (1925)........................................................23, 41, 44

*Whitney v. City of St. Louis*,
   887 F.3d 857 (8th Cir. 2018) ...................................................22, 33

*Wilson v. Seiter*,
   501 U.S. 294 (1991).......................................................21, 27, 29

*Zingg v. Groblewski*,
   907 F.3d 630 (1st Cir. 2018)..........................................5, 22, 23, 43

*Zingg v. Groblewski*,
   No. 1:15-cv-10771 (D. Mass. Feb. 18, 2016)......................................44

*Zingg v. Groblewski*,
    No. 17-2115 (1st Cir. Feb. 15, 2018)......................................................................44

**Statutes**

28 U.S.C. § 1291 ............................................................................................6

28 U.S.C. § 1331 ............................................................................................6

42 U.S.C. § 1983 ..........................................................................................18

**Other Authorities**

U.S. Const. amend. VIII...........................................................................26

U.S. Const. amend. XIV ............................................................................1

## INTRODUCTION

The Eighth Amendment and the Fourteenth Amendment's Due Process Clause contain different language that offer different protections to people who are convicted and held pretrial, respectively. The standards governing claims convicted prisoners bring under the Cruel and Unusual Punishments Clause and claims pretrial detainees bring under the Fourteenth Amendment's Due Process Clause accordingly differ as well. These are not distinctions without a difference.

The text and history of these two constitutional provisions, as well as their long-standing precedent, all make clear that convicted prisoners are protected only from punishment that is cruel and unusual, while pretrial detainees cannot be punished at all. *See, e.g.*, *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). The Eighth Amendment's subjective standard—which requires a demonstration that "an official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety"— "follows from the principle" that only the wanton infliction of pain violates that amendment. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Not so for the Fourteenth Amendment, which provides that the State may not "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. As the Supreme Court articulated in *Kingsley*, this means the appropriate standard for pretrial detainee claims under the Due Process Clause is "solely an objective

one" that does not require the plaintiff to prove a "defendant's state of mind." *See* 576 U.S. at 395, 397.

While *Kingsley* articulated this objective test in the context of a pretrial detainee's excessive-force claim, the majority of appellate courts to squarely consider the question—the Second, Fourth, Sixth, Seventh, and Ninth Circuits— have held that the objective standard applies to *all* pretrial detainee Due Process claims, including challenges to inadequate medical care in response to a serious medical need. *See* 576 U.S. at 394; *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 631-32 (2d Cir. 2025); *Short v. Hartman*, 87 F.4th 593, 609 (4th Cir. 2023); *Brawner v. Scott Cnty.*, 14 F.4th 585, 606-07 (6th Cir. 2021); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

In this case, Lynnel Cox brought such a claim on behalf of her son, Shayne Stilphen, who died of an opioid overdose while in Boston Police custody in the hours following his arrest on July 14, 2019. Mr. Stilphen's death was preventable and predictable. Video footage of Mr. Stilphen at booking and in his cell revealed clear indications of his intoxication; the defendant-officers, who walked by Mr. Stilphen's cell more than a dozen times in the hours before his death, had all been trained to recognize and respond to the signs of opioid intoxication and overdose; and another arrestee had recently died of an overdose in the same police station under similar

circumstances.  Yet, for hours, the defendant-officers Ismael Almeida, Paul Michael Bertocchi, Catia Freire, and Brian Picarello did nothing.

A constitutional challenge to the inadequate provision of medical care requires the plaintiff to demonstrate that the defendant was deliberately indifferent to a serious medical need.  Recognizing that "there may be much to be said" for applying the objective deliberate-indifference standard to Ms. Cox's Due Process claim, the District Court nevertheless declined to use that standard.  Appx21 (quotation marks omitted).  Instead, the court believed it was constrained by First Circuit precedent to apply the subjective deliberate indifference standard.  Appx21. The court thus instructed the jury that Ms. Cox "must prove by a preponderance of the evidence that a defendant had a culpable state of mind in the sense that he or she knew of and disregarded an excessive risk" to Mr. Stilphen and that "deliberate indifference means affirmatively choosing to do the wrong thing or doing nothing despite knowing of a substantial risk of serious harm to another." Appx1175(114:14-24).  This instruction was incorrect, unnecessary, and prejudicial.

*Kingsley*'s impact is not cabined to excessive-force claims.  Relying heavily on conditions-of-confinement precedent, *Kingsley* broadly articulated that a defendant's subjective intent was not "required for a pretrial detainee to prevail on a claim that his due process rights were violated," which instead could be satisfied "by providing only objective evidence that the challenged governmental action is

3

not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  576 U.S. at 398.  Five circuits have correctly interpreted this unqualified holding to apply to all Due Process claims brought by pretrial detainees.  In the context of inadequate medical care claims, this means that a "plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm."  *Short*, 87 F.4th at 611.  Instead, "it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, 'objectively reasonable': that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Short*, 87 F.4th at 611 (citation omitted); *see id.* ("We take this test to be the same test our sister circuits have adopted.").

This Court can similarly adopt this test.  The First Circuit decisions that applied a subjective deliberate indifference test pre-*Kingsley* are no longer binding, as they are "undermined by [that] controlling authority."  *United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2011) (citation omitted); *see also Short*, 87 F.4th at 605-06 & n.8 (noting that *Kingsley* "mandates a departure from prior circuit precedent"). Nor is this Court constrained by the two post-*Kingsley* decisions the District Court cited—*Miranda-Rivera v. Toledo-Dávila*, 813 F.3d 64, 74 (1st Cir. 2016), and *Zingg v. Groblewski*, 907 F.3d 630, 634-35 (1st Cir. 2018)—cases in which this Court

neither issued decisions on, nor was presented with arguments about, the proper standard for pretrial detainee deliberate indifference claims under the Due Process Clause. Where, as in *Miranda-Rivera* and *Zingg*, "an issue is not argued," the subsequent "decision does not constitute a precedent to be followed." *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993) (citations omitted).

The District Court's failure to apply the proper standard was "prejudicial" because "it could have affected the result of the jury's deliberations." *La Plante v. Am. Honda Motor Co., Inc.*, 27 F.3d 731, 737 (1st Cir. 1994). Over the course of the six-day trial, the jurors listened to each of the defendant-officers testify that they were not aware of the risk to Mr. Stilphen's safety. *See, e.g.*, Appx743(161:17-20); Appx763(11:4-5); Appx775(23:4-5); Appx813(61:14-16); Appx924(8:9-11); Appx1016-1017(100:24-101:4); Appx1148-1149(87:12-88:23). Under the subjective deliberate indifference standard, this testimony is dispositive if credited by the jury. But the jury also viewed video footage displaying exactly what the defendant-officers themselves saw on the night of July 14, 2019: Mr. Stilphen struggling to remain upright and sliding down the wall during his booking, and then later, Mr. Stilphen hinging forward over his legs in a contorted position for hours in his cell. The jury heard a police-procedures expert provide unrebutted testimony that a reasonable officer who observed what each of the defendant-officers observed would not have left Mr. Stilphen alone without taking further action. Appx599-

600(17:4-19, 18:9-15); Appx622(40:17-20). And indeed, the jury learned that a fifth officer—exhibiting the actions of a reasonable officer in this situation—entered Mr. Stilphen's cell the very first time he conducted a cell check to provide assistance. Appx968-969(52:18-24; 53:13-21). But by then, it was unfortunately too late.

"[B]ased on a whole-record review," a properly-instructed "rational jury … could have found" that the defendant-officers' inaction was objectively unreasonable irrespective of their subjective awareness. *La Plante*, 27 F.3d at 737. The District Court's erroneous instruction that the jury "also had to find the officers had a proscribed intent … increased, significantly, [Ms. Cox's] burden of proof." *See Kingsley v. Hendrickson*, 801 F.3d 828, 831 (7th Cir. 2015). Accordingly, this Court should vacate and remand for a new trial under the proper objective deliberate indifference standard.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331. After the jury entered its verdict in favor of the defendant-officers, Ismael Almeida, Paul Michael Bertocchi, Catia Freire, and Brian Picarello, Appx306-310, the District Court entered partial final judgment for the officers on Ms. Cox's § 1983 and wrongful death claims under Federal Rule of Civil Procedure 54(b) on December 19, 2024, Appx1217-1220. Ms. Cox timely appealed on January 17, 2025. Appx1221-1223. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the defendant-officers' denial of Mr. Stilphen's Due Process right to adequate medical care should have been determined under the objective deliberate indifference standard—which turns on whether the defendant-officers should have known of the high risk of harm to Mr. Stilphen's health—instead of the subjective deliberate indifference standard the District Court applied—which requires proof of the defendant-officers' actual knowledge.

Whether a rational jury could have found that the defendant-officers violated Mr. Stilphen's Due Process right to adequate medical care in response to a serious medical need if the jury had been properly instructed under the objective deliberate indifference standard.

## STATEMENT OF THE CASE

### I.    The dangers of the opioid epidemic.

The City of Boston has been hard hit by the opioid epidemic.  In particular, the intersection of Massachusetts Avenue and Melnea Cass Boulevard—an intersection known as "Mass and Cass" within the D-4 Boston Police Department ("BPD") Precinct—is commonly referred to as "methadone mile" and widely understood to be an "epicenter of drug use and drug sales in Boston." Appx626(44:8-19);   Appx688-689(106:21-107:2);   Appx690-691(108:25-109:9);   Appx786-787(34:25-35:1);     Appx835-836(83:7-84:11);     Appx845(93:19-24).

7

Officers assigned to D-4 regularly encounter people with opioid use disorder or who are experiencing opioid intoxication or overdose. Appx626(44:8-17); Appx688-689(106:21-107:2); Appx690-691(108:25-109:9); Appx786-787(34:25-35:1); Appx835-836(83:7-84:11); Appx845(93:19-24).

The opioid epidemic has been particularly deadly in part because opioids "suppress the respiratory rate" of people taking them, meaning that opioids "reduce the body's natural drive to breathe normally." Appx457-458(20:23-21:2). This suppressed respiratory rate "is the primary means by which [opioids] cause overdose and death." Appx457-458(20:25-21:7). Before a person stops breathing entirely, a "person who [is] experiencing opioid intoxication can show signs of drowsiness, confusion, slurred speech, loss of posture or slowed or shallowed breathing." Appx458(21:12-16). Someone experiencing opioid intoxication can also "nod off," a "term that refers to a phenomenon that people experience when they have an oversedation with opioids where they may seem to be losing consciousness in otherwise normal situations." Appx458(21:17-22).

Critically, the overdose "process progresses over a period of time, often over minutes to hours," and "there may be a long period of time when there is a declining amount of oxygen but not a critical loss of oxygen yet." Appx460-461(23:25-24:7). Because "[t]he overdose may be progressing," "lack of stimulation and [] lack of monitoring could be very risky." Appx462(25:20-23); Appx495-496(58:12-59:4).

8

As a result, when faced with a person showing signs of opioid intoxication, the "most important thing not to do is to leave a person on their own."  Appx462(25:20-23).

## II.    Mr. Stilphen died from an opioid overdose while in BPD custody.

Shayne Stilphen was one of the millions of Americans to live with opioid use disorder.  Mr. Stilphen first encountered prescription medication as a teenager in his father's medicine cabinet after his father was diagnosed with cancer. Appx368(55:1); Appx374-376(61:8-63:14).  Like so many people in this country, Mr. Stilphen's initial exposure escalated into the disease of addiction.  *See About Prescription Opioids*, CDC (Mar. 7, 2025), https://www.cdc.gov/overdose-prevention/about/prescription-opioids.html;  Appx455(18:5-9).    With the support and encouragement of his mother, Mr. Stilphen repeatedly attempted to achieve active recovery through various treatment programs.  Appx379-380(66:16-67:21).  Mr. Stilphen's life-long battle against opioid use disorder continued from his teenage years until he died a decade later in Boston Police custody.

### A.    Mr. Stilphen displayed symptoms of worsening opioid intoxication while in D-4's holding cell and throughout the booking process.

On July 14, 2019, Boston police arrested Mr. Stilphen on suspicion of breaking and entering into a car near Mass and Cass and took him to the D-4 police station.  Appx130-131; Appx772(20:6-8).  The entirety of Mr. Stilphen's time at the police station was captured on video, Appx1224-1229, revealing clear, obvious, and worsening signs of opioid intoxication and overdose.

9

When he first arrived at D-4, BPD put Mr. Stilphen in a holding cell for approximately half an hour. *See* Appx1224. While in the holding cell, Mr. Stilphen was unsteady on his feet and swayed from side to side, including while speaking with Officer Bertocchi. *E.g.*, Appx1224 at 3:00-3:30. Mr. Stilphen continued to display signs of opioid intoxication during booking as Officers Almeida, Bertocchi, Freire, and Picarello observed. During the fingerprinting process, Mr. Stilphen's body contorted into unnatural postures as he struggled to remain upright, Appx630(48:4-8); Appx708(126:6-9, 126:20-22); Appx710(128:6-17); Appx1226 at 6:36-12:20, and Officers Bertocchi and Freire needed to help Mr. Stilphen stand seven times across the span of five minutes, Appx1226 at 11:15, 11:39, 12:23, 12:55, 13:26, 15:05, 16:08. Officer Bertocchi repeatedly placed his hand on Mr. Stilphen's back to steady him and even held Mr. Stilphen's arm to keep him upright. Appx1226 at 10:59-12:35. Officer Freire likewise "reach[ed] under Officer Bertocchi's arm to help" Mr. Stilphen. Appx630(48:4-8).

 

Appx1226 at 11:39, 16:08.

Mr. Stilphen's symptoms persisted during the booking photo process. Mr. Stilphen continued to have difficulty standing and slumped down the wall repeatedly before Officer Almeida was finally able to take the photos. Appx712(130:12-17); *see, e.g.*, Appx1226 at 18:26, 20:11, 20:47. Mr. Stilphen's intoxication is evident from the booking photos themselves:



Appx131. Once the officers completed the booking photos, they observed Mr. Stilphen struggle to put his shirt back on and continue to bend at the knees. Appx713-714(131:19-132:8); Appx1226 at 21:17-21:43.

## B. BPD officers left Mr. Stilphen alone in a cell where he would overdose and die.

After completing the booking process, Officers Bertocchi and Freire escorted Mr. Stilphen to Cell 19. Appx1225 (Ex. 2-a at 0:05). Mr. Stilphen almost immediately hinged forward at the waist with his arms bent awkwardly behind him while the officers remained outside his door:



Appx1228 (Ex. 5-a at 1:03); Appx632-633(50:21-51:7).  When Officer Bertocchi

pulled the door shut, Mr. Stilphen sat upright in response to the "very loud noise"

the door generated.  Appx1228 (Ex. 5-a at 1:32); Appx633(51:17-25); Appx680-

681(98:22-99:13); Appx715-716(133:21-134:19).  Within a minute of the officers

closing the door to Cell 19 and while the officers remained standing outside his cell,

Mr. Stilphen had once more hinged forward with his arms twisted by his sides.

Appx1228 (Ex. 5-a at 1:57); Appx716-717(134:20-135:1).  The officers departed,

but when Officer Bertocchi returned a few minutes later with food, he observed Mr.

Stilphen once again slumped in that hinged position before Mr. Stilphen sat up in

response to him knocking on the door.   Appx1228 (Ex. 5-a at 11:48-12:03);

Appx717-718(135:5-136:4).

Despite observing Mr. Stilphen struggle throughout the booking process and

collapse into this contorted position upon entering Cell 19, Officers Bertocchi and

Freire neither sought nor provided him with any medical attention.  Appx683(101:5-12); Appx718(136:1-16).  Although this was the last time Officers Bertocchi and Freire saw Mr. Stilphen alive, Officers Almeida and Picarello continued to observe Mr. Stilphen throughout the remainder of his time at D-4.  BPD officers were required to conduct cell checks every fifteen minutes to ensure detainees were alive, "breathing," and not in need of medical attention.  Appx781-782(29:18-30:11); Appx790(38:3-7).  On July 14, 2019, these cell checks were Officer Almeida's responsibility, a duty he chose to share with Officer Picarello.  Appx866(114:2-5); Appx868-869(116:22-117:2); Appx901-902(149:23-150:4).  As a result, Officers Almeida and Picarello had more than a dozen opportunities to observe Mr. Stilphen and take action to save his life.  *See, e.g.*, Appx1225 (Ex. 2-a at 34:19; Ex. 2-b at 6:28; Ex. 2-c at 3:11, 17:52; Ex. 2-d at 2:55, 17:24, 20:04, 28:40; Ex. 2-e at 13:39, 25:36-26:05; Ex. 2-f at 5:59-6:18, 6:46-6:55, 10:15-10:34, 20:50-20:55; Ex. 2-g at 5:10-5:31, 7:12-7:29, 8:52-10:38).  But instead, they did nothing.

Between 2:21 AM and 4:48 AM, Mr. Stilphen repeatedly contorted into unnatural positions and took drugs from a bag the officers had not found during his booking search.  *See* Appx1228 (Ex. 5-a at 13:00-19:24); Appx477(40:11-20). During this time, Officers Almeida and Picarello walked by Mr. Stilphen's cell a combined nine times.  *See* Appx1225 (Ex. 2-a at 34:19; Ex. 2-b at 6:28; Ex. 2-c at 3:11, 17:52; Ex. 2-d at 2:55, 17:24, 20:04, 28:40; Ex. 2-e at 13:39).

13

In some of these instances, the officers failed to even look into Mr. Stilphen's cell. *See, e.g.*, Appx795(43:22-25); Appx869-870(117:12-118:4); Appx1225 (Ex. 2-a at 33:55-34:24); Appx871(119:1-5); Appx1228 (Ex. 5-b at 5:56-6:25); Appx794-795(42:14-24, 43:22-25); Appx1225 (Ex. 2-c at 17:32-17:57); Appx1228 (Ex. 5-c at 17:28-17:51). In others, they looked inside to see Mr. Stilphen twisted into unnatural positions. For example, when Officer Almeida walked by Mr. Stilphen's cell at approximately 3:33 AM, he saw Mr. Stilphen hinged over in a contorted position in which he was doubled over with his head hanging below his crossed legs and arms jutting backward at his sides. Appx871(119:15-19); Appx1225 (Ex. 2-c at 2:50-3:17); Appx1228 (Ex. 5-c at 3:08-10). Officer Picarello similarly saw Mr. Stilphen sitting with his legs crossed under him and his hands below his face when he looked inside at 4:43 AM. Appx797(45:4-10); Appx1225 (Ex. 2-e at 13:12-13:47); Appx1228 (Ex. 5-e at 13:14-13:43). In every single one of these instances, however, Officers Almeida and Picarello failed to check whether Mr. Stilphen was responsive or seek out or provide medical attention for him. *See, e.g.*, Appx871(119:15-19); Appx1225 (Ex. 2-c at 2:50-3:17); Appx1228 (Ex. 5-c at 3:08-10).

According to the unrebutted expert testimony of Dr. Ross MacDonald, at approximately 4:48 AM, Mr. Stilphen progressed from opioid intoxication with a risk of an overdose into overdose. Appx478-479(41:3-42:8). At this time, Mr.

Stilphen collapsed into "an unnatural doubled-over position" that dangerously "put pressure on the thoracic cavity, which would further restrict the flow of oxygen in a person who was experiencing opioid intoxication." Appx478-479(41:8-42:14); Appx1228 (Ex. 5-e at 17:20-30:00; Ex. 5-f; Ex 5-g at 0:00-22:36).



Appx1228 (Ex. 5-e at 18:58). Until he stopped breathing nearly an hour later, Mr. Stilphen remained unmoving in this unnatural, contorted position with his face in the food Officer Bertocchi had delivered to him hours earlier. Appx1228 (Ex. 5-e at 18:25-18:58).

During this period, the "administration of Narcan" still "could have prevented his death." Appx479(42:2-8). And during this period, Officers Almeida and Picarello continued to walk by Mr. Stilphen's cell. Officer Almeida walked by at 4:55 AM, 5:05 AM, 5:07 AM, 5:10 AM, 5:20 AM, 5:35 AM, and 5:37 AM.

Appx1225 (Ex 2-e at 25:36-26:05; Ex. 2-f at 5:59-6:18, 6:46-6:55, 10:15-10:34; Ex 2-f at 20:50-20:55; Ex 2-g at 5:10-5:31, 7:12-29).  Officer Picarello walked by at 5:20 AM and 5:38 AM.  Appx1225 (Ex 2-f at 20:50-20:55; Ex. 2-g at 8:52-10:38).  Although they did not do so in every instance, Officers Almeida and Picarello repeatedly looked into Mr. Stilphen's cell as he remained in the same hinged-over position.  *See, e.g.*, Appx877(125:6-21); Appx1225 (Ex 2-e at 25:36-26:04); Appx1228 (Ex 5-e at 25:45-26:07); Appx878(126:7-23); Appx1225 (Ex 2-f at 6:00-6:53); Appx798-799(46:25-47:20); Appx881(129:4-8).  Indeed, Officer Picarello placed a food tray in the slot of Mr. Stilphen's door at 5:38 AM, fifty minutes after Mr. Stilphen entered into his unmoving, contorted position and one minute before Mr. Stilphen "drew his last breath."  Appx557(120:1-22) (BPD investigating officer testifying he determined Mr. Stilphen "drew his last breath" at 5:39 AM); Appx799-801(47:21-48:14, 48:17-49:9); Appx1225 (Ex. 2-g at 9:10-9:24, 10:24-10:35); Appx1228 (Ex 5-g at 9:04-9:16).  Despite Mr. Stilphen's manifestly abnormal position, in none of these instances did Officer Almeida or Officer Picarello check whether Mr. Stilphen was responsive, or seek out or provide medical attention for him.  *See, e.g.*, Appx877-883(125:11-130:7, 131:8-21); Appx789-790(37:21-38:2); Appx795-801(43:16-49:9).

### C.    Officer Doolan interceded when he conducts his first cell check.

Although it was not his responsibility that evening, Officer Doolan was asked to conduct a cell check at 5:51 AM. Appx967-968(51:23-52:7). That cell check was the first and only one Officer Doolan conducted. Appx968(52:18-24). In the period immediately prior to this cell check, Officer Doolan had been responding to another detainee, Joseph Perry, who had repeatedly slammed his own head against the door of a police vehicle when he arrived at D-4. Appx965-966(49:24-50:5); Appx873-874(121:23-122:1). While Officer Almeida had only a "brief" interaction with Mr. Perry, and Officer Picarello was ordered to stay away from the area with Mr. Perry and had no interaction with him, Appx873(121:19-23); Appx816-817(64:24-65:6, 65:10-11), Officer Doolan "was the person who was trying to remove [Mr. Perry] from the wagon after he had done what he had done to himself." Appx965-966(49:24-50:11). Officer Doolan "remember[ed] being covered in blood and doing everything [he] could to prevent [Mr. Perry] from trying to cause more harm to himself." Appx965-966(49:24-50:5). He then took a shower and conducted a cell check. Appx966-967(50:25-51:8); Appx1225 (Ex. 2-g at 21:38-21:58).

When he conducted this cell check, Officer Doolan observed Mr. Stilphen in the hinged position—the same position Mr. Stilphen had been in for more than an hour as Officers Almeida and Picarello walked by—and his "attention was just drawn to [Mr. Stilphen]." Appx969(53:9-15); Appx1228 (Ex. 5-g at 21:22-21:40).

Officer Doolan "kicked on the door" and "called out [Mr. Stilphen's] name a couple of times," but still "did not get any response."  Appx969(53:16-21); Appx1225 (Ex. 2-g at 21:58-22:18); Appx1228 (Ex. 5-g at 21:40-22:02).  Officer Doolan called for Officer Almeida to bring the cell key, and the officers administered CPR and Narcan, but it was too late to save Mr. Stilphen's life.  Appx1228 (Ex. 5-g at 21:35-28:17).

## III.    The District Court instructed the jury under the subjective deliberate indifference standard, and the jury found in favor of the defendant-officers.

After Mr. Stilphen's death, Ms. Cox filed suit against the City of Boston and Officers Almeida, Bertocchi, Freire, and Picarello.  Appx27-68.  The complaint asserted claims under 42 U.S.C. § 1983 against all four officers and the City of Boston for their failure to adequately monitor and provide medical treatment to Mr. Stilphen.  Ms. Cox also brought a wrongful-death claim against the four officers and a claim against the City of Boston under the Americans with Disabilities Act (ADA). Appx63-66.  Before this case went to trial, the District Court bifurcated the claims against the City of Boston.  Appx16.

Throughout pre-trial proceedings, the District Court was squarely presented with the question of whether, in light of the Supreme Court's decision in *Kingsley*, the objective or subjective deliberate indifference standard applied to Ms. Cox's § 1983 claim.  In denying both the defendants' motions to dismiss and for summary judgment, the District Court noted that "the First Circuit has not addressed" or

18

"directly joined" the issue.  Mem. & Order on Defs.' Mot. To Dismiss at 6 n.1, ECF No. 36; Appx79.  At summary judgment, the District Court concluded it "need not attempt to resolve the issue" because Ms. Cox "could prevail under either standard." Appx79.

Three days before the trial began, however, the District Court held it would apply the subjective deliberate indifference standard, stating it was "constrained by pre-*Kingsley* First Circuit precedent unless and until the First Circuit indicates otherwise" and noting that "two post-*Kingsley* First Circuit cases involving pretrial detainee medical care claims" applied the "Eighth Amendment" subjective deliberate indifference standard.  Appx21.  As a result, the District Court instructed the jury that Ms. Cox needed to prove that the defendants "knew of and disregarded an excessive risk to a detainee's health and safety."  Appx1175(114:14-24).  "In plain-spoken terms," the District Court instructed, "deliberate indifference means affirmatively choosing to do the wrong thing or doing nothing despite knowing of a substantial risk of serious harm to another."  *Id.*

Under this standard, after a six-day trial on the claims against the individual officers, the jury returned a verdict in favor of all four officers on both the § 1983 and wrongful death claims.  Appx306-310.  Ms. Cox filed a motion for a new trial or, alternatively, for separate and final judgment on several grounds, including, as relevant here, the District Court's decision to instruct the jury under the subjective

rather than objective deliberate indifference standard.  Pl.'s Mem. in Supp. of Mot. for New Trial &, in the Alternative, for Partial Final J. & Stay, ECF 195.  The District Court denied that motion.  Appx1193-1209.  After soliciting briefing on the remaining ADA claim pending against the City of Boston, the District Court stayed proceedings against the City and entered separate and final judgment for Officers Almeida, Bertocchi, Freire, and Picarello.  Appx1210-1220.  The District Court subsequently denied the City of Boston's motion to certify the non-dismissal of the ADA claim for an interlocutory appeal.  Appx25-26.  The only claim at issue on appeal is Ms. Cox's § 1983 claim against the defendant-officers.

## SUMMARY OF ARGUMENT

The dispute at issue on appeal boils down to one question—whether the defendant-officers' liability should be governed by the subjective or objective deliberate indifference standard.

I.    The Supreme Court has already answered this question.  It has long been clear that while convicted prisoners fall within the Eighth Amendment's ambit and have the right to be free from cruel and unusual punishment, pretrial detainees cannot be punished at all, let alone cruelly and unusually, and fall within the shelter of the Due Process Clause.  *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  Given that the "language of the two Clauses differ, and the nature of the claims often differs," the standard that governs claims brought under the Eighth Amendment and

20

Due Process Clause likewise differs.  Because the Eighth Amendment considers whether an officer's conduct constituted "the unnecessary and wanton infliction of pain," the Eighth Amendment requires a subjective "inquiry into a prison official's state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  In contrast, as the Supreme Court reiterated in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), a pretrial detainee can "prevail on a claim that his due process rights were violated … by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective." *Id.* at 398-400.

Although the claim presented in *Kingsley* was an excessive-force claim, the Court's holding extends beyond those claims.  Indeed, the majority of circuit courts to have considered this issue have recognized as much, broadly applying *Kingsley*'s objective standard to pretrial detainees' Due Process claims.  *See, e.g.*, *Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614 (2d Cir. 2025); *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023); *Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021); *Miranda v. Cnty. of Lake*, 900 F.3d 335 (7th Cir. 2018); *Gordon v. Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018).  These courts have highlighted the Supreme Court's extensive discussion of the differences between the Eighth Amendment and Due Process Clause.  *E.g.*, *Darnell v. Pineiro*, 849 F.3d 17, 34 (2d Cir. 2017); *Castro v. City of Los Angeles*, 833 F.3d 1060, 1069-70 (9th Cir. 2016); *Miranda*, 900 F.3d at 352.  As the Fourth Circuit put it, the "only way to respect the distinction *Kingsley*

21

drew between the Eighth and Fourteenth Amendments is to recognize that *Kingsley*'s objective test extends to *all* pretrial detainee claims for deliberate indifference." *Short*, 87 F.4th at 610 (emphasis added). The minority of courts to have diverged from this well-trodden path have done so with little to no reasoning at all, *see Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018); *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017), or with reasoning that flies in the face of well-established Supreme Court precedent, *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020).

This Court should join the majority of appellate courts and hold that *Kingsley*'s objective standard applies to pretrial detainees' inadequate medical-care claims under the Due Process Clause. *Kingsley* represents a marked "departure from prior circuit precedent" that applied a subjective deliberate indifference standard to Due Process claims. *Short*, 87 F.4th at 605 n.8. It therefore eliminates the need for en banc consideration as "controlling authority" that contradicts these decisions, or at the very least, because it "offers a sound reason for believing" those panels would no longer reach the same decision, *United States v. Rodriguez*, 527 F.3d 221, 224-25 (1st Cir. 2008), given just how "irreconcilable" they are with *Kingsley*, *Short*, 87 F.4th at 605 n.8. Nor is this Court constrained by two post-*Kingsley* decisions, *Miranda-Rivera v. Toledo-Dávila*, 813 F.3d 64 (1st Cir. 2016), and *Zingg v.*

*Groblewski*, 907 F.3d 630 (1st Cir. 2018). Neither decided the standard that applies to pretrial detainee Due Process claims, and for good reason. None of the parties ever cited *Kingsley*, let alone raised the applicable standard as an issue. Because issues that are "neither brought to the attention of the Court nor ruled upon are not considered as having been so decided as to constitute precedents," this Court is free to adopt the proper objective standard. *See Webster v. Fall*, 266 U.S. 507, 511 (1925).

II.    The District Court's decision to instruct the jury under the subjective deliberate indifference standard was prejudicial error. The court's imposition of the subjective standard placed a higher burden of proof on Ms. Cox because the court instructed the jury that Ms. Cox needed to establish that the defendant-officers had *actual knowledge* of Mr. Stilphen's serious medical need and the risk of their inaction. So long as it is credited by the jury, the defendant-officers' trial testimony that they were unaware of the risks would have defeated such a standard. But under *Kingsley*, Ms. Cox only needed to show that the defendant-officers *should have known* of Mr. Stilphen's serious medical need and the risk their inaction posed to him. And the record is replete with evidence that the defendant-officers' behavior did not meet this objective standard, including: the video demonstrating Mr. Stilphen's inability to remain upright at booking and his unnatural contorted positions in Cell 19; the testimony regarding the defendant-officers' training to

recognize and react to opioid intoxication and overdose; the evidence of Officer Doolan's contrary reaction during his very first cell check that night; and the unrebutted testimony of a police procedures expert that each of the defendant-officers failed to act as a reasonable officer in their position would have acted.

From this record, a properly instructed jury could have concluded that the defendant-officers were objectively unreasonable in failing to adequately monitor Mr. Stilphen and seek medical treatment for him. Because the District Court's erroneous instruction was prejudicial, this Court should reverse and remand for a new trial.

## STANDARD OF REVIEW

This Court reviews de novo whether a district court's jury instructions were incorrect as a matter of law. *Costa-Urena v. Segarra*, 590 F.3d 18, 24 (1st Cir. 2009). If "the instruction is erroneous, a new trial will be ordered if the error, based on the entire record, was prejudicial." *Id.* (citation and quotation marks omitted).

Additionally, this Court reviews for an abuse of discretion the denial of a new trial motion. *See Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 23 (1st Cir. 2014). An "error of law is a prime example of an abuse of discretion." *Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 371 (1st Cir. 2024) (quotation marks omitted).

# ARGUMENT

**I.    The objective deliberate indifference test applies to Ms. Cox's claim that the defendant-officers violated Mr. Stilphen's Due Process right to adequate medical care in response to a serious medical need.**

A plaintiff raising a § 1983 claim under the Due Process Clause for the failure to provide adequate medical care must prove that: (1) the plaintiff had a serious medical need, (2) the defendant's action or inaction in response to that serious medical need was deliberately indifferent, and (3) the defendant's conduct caused the plaintiff's injury. *See Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155-56 (1st Cir. 2007).[1]

As to the first prong, the defendant-officers do not dispute that at least as of 4:43 AM, Mr. Stilphen suffered from a serious medical need.  Officers Almeida, Bertocchi, Freire & Picarello's Mem. in Supp. of Mot. for Summ. J. at 14, ECF No. 85.  Even prior to that time, Mr. Stilphen showed clear signs that he was suffering from opioid intoxication and at risk of overdosing, which is a need "so obvious" that even someone who is not a medical professional "would easily recognize the necessity for a doctor's attention." *See Leavitt v. Corr. Med. Servs.,* 645 F.3d 484,

---

[1] Although in non-legal parlance, "the term deliberate indifference suggests subjectivity," the Second, Fourth, Sixth, Seventh and Ninth Circuits all "retain the term deliberate indifference despite adopting *Kingsley*'s purely objective standard," based on the Supreme Court's recognition that "outside of the Eighth Amendment context, the term deliberate indifference is not necessarily subjective." *Short*, 87 F.4th at 605 n.7 (quotation marks omitted); *see also id.* (noting that "an alternative term, such as 'objective indifference' may be preferable if we were writing on a clean slate").

497 (1st Cir. 2011). With respect to the third prong, the defendant-officers did not even argue lack of causation in closing arguments to the jury, and understandably so. *See* Appx1101(40:6-12, 40:20-25); Appx1105(44:17-25); Appx1112(51:5-14); Appx1116(55:23-25); Appx1120(59:10-15); Appx1123(62:4-21); Appx1127(66:4-10). Mr. Stilphen's death was a reasonably foreseeable consequence of the defendant-officers' failure to adequately monitor Mr. Stilphen and seek medical care for him, which caused Mr. Stilphen to die in their custody: had any of the defendant-officers intervened, Mr. Stilphen would still be alive today.

The dispute on appeal, therefore, is a straightforward legal question: does an objective or subjective standard apply to the deliberate indifference prong of the test? This Court should join the growing majority of circuits and hold that *Kingsley* requires the application of an objective deliberate indifference standard to pretrial detainees' Due Process claims challenging the failure to provide adequate medical care in the face of a serious medical need.

### A. Supreme Court precedent establishes that an objective deliberate indifference standard applies to all Due Process claims brought by pretrial detainees.

The Supreme Court has long recognized that people are protected by different constitutional clauses pre-and-post conviction. The Eighth Amendment protects prisoners from "cruel and unusual punishments," U.S. Const. amend. VIII, which includes deliberate indifference to their serious medical needs, *Estelle v. Gamble*,

429 U.S. 97, 105 (1976); *see id.* at 104-105 (explaining denial of medical care can implicate the Eighth Amendment because it may produce physical torture, death, or pain and suffering that serves no penological purpose). Because "only the unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment," the Eighth Amendment "mandate[s] inquiry into a prison official's state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). In other words, the "source of the intent requirement" for deliberate indifference claims brought under the Eighth Amendment is "the Eighth Amendment itself, which bans only cruel and unusual *punishment*." *Wilson*, 501 U.S. at 300 (emphasis in original). The Eighth Amendment "does not outlaw cruel and unusual 'conditions.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, "if the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Wilson*, 501 U.S. at 300 (emphasis in original).

In contrast, the Fourteenth Amendment's Due Process Clause "requires that a pretrial detainee not be punished" at all. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). While an intent to punish is certainly *sufficient* to demonstrate a Due Process violation, it is not necessary. *See id.* at 538; *Short*, 87 F.4th at 609. Absent such intent, that demonstration can still be satisfied "by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the

27

actions 'appear excessive in relation to that purpose.'" *Kingsley*, 576 U.S. at 398 (quoting *Bell*, 441 U.S. at 561).

The textual distinction between the Eighth Amendment and the Due Process Clause formed the backbone of the Supreme Court's 2015 *Kingsley* decision. *See* 576 U.S. at 400 (recognizing the "language of the two Clauses differs, and the nature of the claims often differs"). Building on decades of precedent, *Kingsley* distinguished cases that had applied a subjective standard under the Eighth Amendment and determined that, in contrast, a pretrial detainee must only show that an officer's actions were objectively unreasonable under the Due Process Clause. *See* 576 U.S. at 391-92, 400. The reasoning of *Kingsley* itself applies broadly, but the Court also took several additional steps to further indicate that its holding extends far beyond the excessive-force claim at issue in that case.

First, the Court articulated a test that encompassed all pretrial-detainee Due Process claims, stating "a pretrial detainee can prevail by providing only objective evidence that the *challenged governmental action* is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (emphasis added). While the Court could have easily limited "challenged governmental action" to excessive force, it made no attempt to do so. *Id.*

Second, the Court leaned heavily on *Bell* as "consistent … precedent," which itself evaluated not an excessive-force claim but rather a challenge to "a *variety of prison conditions*, including a prison's practice of double-bunking." *Kingsley*, 576 U.S. at 397-98 (emphasis added) (citation omitted).  Again, the Court noted a "variety of prison conditions," without limitation.  This reliance on a conditions case is particularly meaningful here because the Supreme Court has explained there is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate conditions of confinement." *Wilson*, 501 U.S. at 303 (quotation marks omitted).

Third, the Supreme Court has historically applied *more* deference to cases involving prison officials' use of force because they "are necessarily taken in haste, under pressure, and balanced against competing institutional concerns for the safety of prison staff or other inmates." *Wilson*, 501 U.S. at 302 (citation and quotation marks omitted).  In contrast, challenges involving the obligation to care for the medical needs of incarcerated people do not ordinarily involve similar split-second decisions. *Id.*  Limiting *Kingsley* to excessive-force cases would mean pretrial detainees could win excessive-force cases with objective evidence alone but would need subjective state-of-mind evidence for all other conditions claims.  This would illogically afford prison officials *the least* deference in excessive-force litigation. That cannot be correct.

29

**B.    The majority of appellate courts to have considered the issue have applied an objective deliberate indifference standard to inadequate medical care claims brought under the Due Process Clause.**

Since the Supreme Court's 2015 decision in *Kingsley*, nine appellate courts have considered its application to inadequate medical-care claims brought under the Due Process Clause by pretrial detainees.  Five have read the clear message of the Supreme Court's *Kingsley* decision and issued in-depth decisions adopting the objective deliberate indifference standard for such claims.[2]  This Court should become the sixth.

---

[2] *See Lara-Grimaldi*, 132 F.4th at 630-34 (Second Circuit holding that "a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege *either* that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health *or* that the defendants *should have known* that failing to provide the omitted medical treatment  would pose a substantial risk to the detainee's health." (emphasis in original) (citation omitted)); *Short*, 87 F.4th 611-12 (Fourth Circuit holding that a "plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm ....  Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, objectively unreasonable." (citation and quotation marks omitted)); *Hulon v. City of Lansing*, 2025 WL 817492, at *3 (6th Cir. Mar. 14, 2025) (noting that the Sixth Circuit has "foreclosed any inquiry into an officer's subjective understanding" and that a plaintiff must now only prove that a defendant acted "recklessly in the face of an unjustifiably high risk of harm that is ... so obvious that it should be known" (citation and quotation marks omitted)); *Miranda*, 900 F.3d at 350-52 (Seventh Circuit concluding "that medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*"); *Gordon*, 888 F.3d at 1124-25 (Ninth Circuit holding "that claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." (quotation marks

In holding that *Kingsley* requires the application of an objective deliberate indifference standard to Due Process claims beyond excessive-force challenges, the Second, Fourth, Sixth, Seventh and Ninth Circuits all emphasized the Supreme Court's contrast between the "different functions of the Eighth Amendment's Cruel and Unusual Punishments Clause and the Fourteenth Amendment's Due Process Clause." *Darnell v. Pineiro*, 849 F.3d 17, 34 (2d Cir. 2017); *see also Castro v. City of Los Angeles*, 833 F.3d 1060, 1069-70 (9th Cir. 2016) (same); *Miranda*, 900 F.3d at 352 ("The Court has cautioned that the Eighth Amendment and Due Process analyses are not coextensive.").[3]  This divergence cannot be cabined to excessive-force claims: instead, the "only way to respect the distinction *Kingsley* drew between the Eighth and Fourteenth Amendments is to recognize that *Kingsley*'s objective test extends to all pretrial detainee claims for deliberate indifference to an excessive risk of harm," including claims for inadequate medical care.  *Short*, 87 F.4th at 610.  As the Second Circuit explained:

> After *Kingsley*, it is plain that punishment has no place in defining the *mens rea* element of a pretrial detainee's claim under the Due Process

_____

omitted)).  In its order denying Ms. Cox's motion for a new trial, the District Court omitted the Fourth and Sixth Circuits as appellate courts "aligned with the objective test."  Appx1197.

[3] Although *Darnell* and *Castro* addressed the application of an objective deliberate indifference standard to a conditions-of-confinement and a failure-to-protect claim, respectively, the Second and Ninth Circuits later adopted this reasoning and standard within the context of challenges to inadequate medical care. *See Lara-Grimaldi*, 132 F.4th at 630-34; *Gordon*, 888 F.3d at 1122-25.

> Clause.  Unlike a violation of the Cruel and Unusual Punishments Clause, an official can violate the Due Process Clause of the Fourteenth Amendment without meting out any punishment, which means that the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm.

*Darnell*, 849 F.3d at 35.

The five appellate courts also noted additional elements of *Kingsley*'s reasoning that mandate a broader application of its holding.  For example, the sweep of *Kingsley*'s language, which "refers broadly to challenged governmental action and speaks of claims under the Fourteenth Amendment generally … demonstrate[s] that *Kingsley*'s objective standard extends not just to excessive force claims; it applies equally to deliberate indifference claims." *Short*, 87 F.4th at 605-06 (citation and quotation marks omitted); *see also Castro*, 833 F.3d at 1070 ("We note, too, the broad wording of *Kingsley* … The Court did not limit its holding to 'force' but spoke to 'the challenged governmental action' generally."). *Kingsley*'s "heavy reliance on *Bell v. Wolfish*"—a conditions of confinement case—similarly speaks to the expanse of its holding. *See Short*, 87 F.4th at 605-06.

Finally, these decisions saw "nothing in the logic the Supreme Court used in *Kingsley* that would support [a] kind of dissection of the different types of claims that arise under the Fourteenth Amendment's Due Process Clause." *Miranda*, 900 F.3d at 352; *see also Gordon*, 888 F.3d at 1124 (noting "we have long analyzed claims that government officials failed to address pretrial detainees' medical needs

using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way"). Put differently, these decisions could find no principled basis to hold that an objective standard articulated in an excessive-force case, itself built upon a conditions-of-confinement case, should not be applied to an inadequate-provision-of-medical-care case, because *all* such claims were brought under the Due Process Clause.

Placed alongside this appellate majority, the minority that has gone the other way has little reasoning to speak of. Three of the four appellate courts that ignored *Kingsley*'s holding and continued to apply a subjective deliberate indifference standard dispatched *Kingsley* in a footnote "with little analysis or none at all." *Short*, 87 F.4th at 610 n.9; *see Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018); *Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017). The sole appellate decision to articulate any purported reasoning for the continued viability of the subjective deliberate indifference standard under the Due Process Clause was the Tenth Circuit's *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020), and that decision has been expressly rejected by the two appellate courts that considered the same question after its issuance. *See Short*, 87 F.4th at 610-11

(dismissing *Strain*'s reasoning as "unpersuasive"); *Brawner*, 14 F.4th at 595-96

("reject[ing]" *Strain*'s arguments).  This Court should do the same.[4]

Specifically, *Strain* stated three reasons that it "declined to extend *Kingsley* to

Fourteenth Amendment deliberate indifference claims."  977 F.3d at 991.  None of

*Strain*'s articulated justifications is compelling.

First, *Strain* suggested that "*Kingsley* turned on considerations unique to

excessive force claims"—namely, "whether the use of force amounted to

punishment," whereas the "deliberate indifference cause of action does not relate to

punishment, but rather safeguards a pretrial detainee's access to adequate medical

care."  *Id.*  This purported distinction is nothing but a mirage.  *Kingsley*'s own

reasoning turned on general differences between the Eighth Amendment and the Due

Process Clause and referred to a conditions-of-confinement case as "consistent …

precedent" with its holding. 576 U.S. at 397-98.  And "[w]hile it is certainly true that

the deliberate indifference cause of action safeguards a detainee's right to medical

care, it is not true that this cause of action does not relate to punishment."  *Short*, 87

F.4th at 610.  To the contrary, the Supreme Court recognized that the Eighth

Amendment protected against deliberate indifference to a serious medical need

---

[4] Notably, the Supreme Court has twice declined the opportunity to reject the broader application of *Kingsley* to pretrial detainee Due Process claims.  *See Scott Cnty. v. Brawner*, 143 S. Ct. 84 (2022) (denying petition for writ of certiorari); *L.A. Cnty. v. Castro*, 137 S. Ct. 831, 832 (2017) (same).

specifically because the denial of medical care that results in pain and suffering, which does not "serve any penological purpose[,] … amount[s] to unjust punishment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)) (quotation marks omitted).

Second, *Strain* asserted that the very "nature of a deliberate indifference claim infers a subjective intent." 977 F.3d at 991. This cannot be squared with the Supreme Court's clear statement that its "decision that Eighth Amendment liability requires consciousness of a risk is [] based on the Constitution and our cases, not merely a parsing of the phrase 'deliberate indifference,'" whose meaning can change under different circumstances because it "is a judicial gloss, appearing neither in the Constitution nor a statute." *Farmer*, 511 U.S. at 840. As the Sixth Circuit explained, "the *Farmer* Court adopted the subjective component of the test for deliberate indifference under the Eighth Amendment based on the language and purposes of the amendment, focusing particularly on 'punishments,' and not on any intrinsic meaning of the term." *Brawner*, 14 F.4th at 595. Indeed, "outside of the Eighth Amendment context, the term 'deliberate indifference' is not necessarily subjective," as "it is 'equivalent of reckless[ness],' which is an objective standard in the civil law context, but a subjective standard in the criminal law context." *Short*, 87 F.4th at 605 n.7 (quoting *Farmer*, 511 U.S. at 836-37). This Court should

therefore reject any attempt to argue that "the term 'deliberate indifference' itself demands a subjective standard." *Brawner*, 14 F.4th at 595.

Finally, *Strain* contended that "principles of *stare decisis*" weighed against extending the Supreme Court precedent "to a new context or new category of claims." 977 F.3d at 991. But such a cramped reading of *Kingsley* blindly "ignore[es] *Kingsley*'s rationale" and "reduces" its "reasoned judgment to an arbitrary fiat." *Short*, 87 F.4th at 610. The Supreme Court itself in *Kingsley* "direct[ed] [courts] to be more solicitous of the Fourteenth Amendment claims of a pretrial detainee than the Eighth Amendment claims of a post-conviction detainee, for 'pretrial detainees (unlike convicted prisoners) cannot be punished at all.'" *Short*, 87 F.4th at 609 (quoting *Kingsley*, 576 U.S. at 400). Complying with that mandate follows, rather than conflicts with, principles of *stare decisis*.

### C. This Court can and should adopt an objective deliberate indifference standard for inadequate medical care claims brought under the Due Process Clause by pretrial detainees.

The District Court acknowledged that there was "much to be said" for applying *Kingsley*'s objective standard to this case, but went on to instruct the jury under a subjective deliberate indifference standard based on its belief that it was constrained by both pre- and post-*Kingsley* decisions in this circuit. Appx21; Appx1175-1177(114:8-116:10). Neither prevents this Court from reversing and remanding for a new trial under the objective deliberate indifference standard.

i.    **This Court is not bound by pre-Kingsley decisions.**

This Court's typical adherence to the law-of-the-circuit doctrine has no application where, as here, "the holding of a previous panel is contradicted by a controlling authority," or where "authority that postdates the original decision" is "not directly controlling" but "nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *United States v. Rodriguez*, 527 F.3d 221, 224-25 (1st Cir. 2008) (citations and quotation marks omitted).  Under these exceptions, *Kingsley*'s square rejection of the application of the subjective standard to pretrial detainees' Due Process Clause claims permits a panel of this Court to depart from cases that previously applied that standard.

This Court has already applied these exceptions in instances where the intervening authority was less on point than *Kingsley* is here.  *Cf. United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2011) (noting intervening authority "need not be directly on point to undermine [a previous panel's] opinion[]").  For example, a three-judge panel in *Rodriguez* held a district court erred in an immigration prosecution when it concluded it could not depart from the Sentencing Guidelines to avoid a sentencing disparity between the defendant's case and cases that were part of a fast-track program in other states.  *See* 527 F.3d at 231.  The First Circuit had previously disallowed such departures in other cases where the defendant had raised

the same fast-track-based disparity. *Id.* at 221. But in the intervening years, the Supreme Court decided *Kimbrough v. United States*, 552 U.S. 85 (2007). *Kimbrough* did not address disparities caused by the fast-track program, but it did affirm a district court's discretion to depart from the Sentencing Guidelines' differential treatment of crack and powder cocaine when it determined that this disparity would yield a sentence greater than necessary. *See Kimbrough*, 552 U.S. at 109-10. To reach that decision, the Supreme Court spoke "broadly" about a sentencing court's discretion to vary from the Guidelines based "solely on policy considerations." *Rodriguez*, 527 F.3d at 226. It was through this "gloss" and "prism of *Kimbrough*" that the three-judge *Rodriguez* panel abandoned the First Circuit's earlier decisions disallowing departures for fast-track-based disparities, noting that "although *Kimbrough* involved the crack/powder ratio, its approach plainly has wider implications arguably affecting a number of our earlier cases, including but not limited to, how we have treated disparities arising out of the selective institution of fast-track programs." *Id.* at 527 F.3d at 226-27.

Applying similar reasoning, a three-judge panel in *United States v. Holloway*, 630 F.3d 252 (1st Cir. 2011), held that a Massachusetts assault and battery indictment that used boilerplate charging language that did not distinguish between the harmful, offensive, or reckless battery offenses covered by the state statute did not on its own constitute a violent felony under the Armed Career Criminal Act

(ACCA).  An earlier panel had reached the opposite conclusion using the federal court's interpretation of the charging language.  *See id.* at 254.  But that was before the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010), which held that (1) a charge for a battery offense in Florida, where the relevant statute could be satisfied by "*any* intentional physical contact, no matter how slight," could not on its own establish a violent felony under the ACCA, and (2) for purposes of determining whether a charge constituted a violent felony under the ACCA, federal courts were bound by a state's interpretation of state law.  559 U.S. at 135-40 (emphasis in original).  Recognizing that the meaning of the Massachusetts charging language was "an issue *Johnson* did not address," *Holloway* went on to emphasize that a "close inspection of the Supreme Court's analysis in *Johnson* [ ] reveals a significant tension between the reasoning of *Johnson*" and the prior First Circuit decision.  *Holloway*, 630 F.3d at 259.  Specifically, *Johnson* directed the Court to look to Massachusetts law, which indiscriminately used the boilerplate language to indict for every battery offense, and *Johnson* directed that such a broad charge that encompassed "no more than offensive touchings" was insufficient under the ACCA.  630 F.3d at 260.  This tension led *Holloway* to eschew the earlier First Circuit decision.  *Id.*

Even more directly than in *Rodriguez* and *Holloway*, *Kingsley*'s "prism" and "gloss" cannot be read in any way other than fatally undermining earlier panel

decisions that did not apply an objective deliberate indifference standard, or at the very least, offering a sound reason to believe the panels would now issue a different opinion. *See Rodriguez*, 527 F.3d at 226, 228. Indeed, "*Kingsley* is irreconcilable with precedent requiring pretrial detainees to meet a subjective standard to succeed on claims under the Fourteenth Amendment for prison officials' deliberate indifference to excessive risks of harms to the inmate." *Short*, 87 F.4th at 605. For this reason, the Second, Fourth, Sixth, and Seventh Circuits all concluded that "*Kingsley* mandates a departure from prior circuit precedent and eliminates the need for en banc consideration of the issue." *Short*, 87 F.4th at 605 n.8; *Brawner*, 14 F.4th at 595-96 ("As other circuits have recognized, *Kingsley* is an inconsistent Supreme Court decision that requires modification of our caselaw, and therefore we may amend our standard to be consistent with *Kingsley*." (citations omitted)). This Court is similarly not constrained by pre-*Kingsley* First Circuit panel decisions.

> ### ii.    This Court is not bound by post-*Kingsley* decisions.

The District Court also felt constrained by this Court's decisions in *Miranda-Rivera* and *Zingg*, *see* Appx21, but those decisions do not bind this Court to apply a subjective rather than objective deliberate indifference standard to pretrial detainee medical-care claims under the Due Process Clause. Neither *Miranda-Rivera* nor *Zingg* were presented with or discussed the matter of these two competing standards; even more fundamentally, neither actually decided the standard that applies to

pretrial detainees' Due Process claims. *Cf. Thompson v. Howry*, 2024 WL 4350214, at *8 (D.N.H. Sept. 30, 2024) ("The First Circuit has not addressed the post-*Kingsley* circuit split as to whether a due process medical treatment claim can be established without proof of subjective deliberate indifference.").

"[S]tare decisis precludes the relitigation of legal issues that have previously been heard and authoritatively determined," *Eulitt ex rel Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 348 (1st Cir. 2004), *overruled on other grounds*, but issues that are "neither brought to the attention of the Court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925); *see also Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 608 (1st Cir. 1989) (quoting *Webster* for this proposition). This makes sense. It ensures that unexamined questions are not foreclosed from future legal analysis.

Under this doctrine, the Supreme Court dismissed a claim brought against the Secretary of the Interior and his inferior officers "for want of a necessary party" where the inferior officers, but not the Secretary, had been served. *Webster*, 266 U.S. at 511. The Court saw no need to overturn or distinguish prior decisions where the Court had proceeded to the merits of other claims against inferior officers where their superior officers were not joined, because "in none of them was the point here at issue suggested or decided." *Id.* As a result, the Supreme Court paid no mind to those prior decisions.

The First Circuit has taken the same approach, refusing to be bound by the statements of prior panel decisions that reflect neither the reasoned arguments of the parties, nor the reasoned decision-making of the Court. *See, e.g.*, *Gately*, 2 F.3d at 1226 (holding issues that are not argued before a court do "not constitute a precedent to be followed"). For example, in *United States v. DiPina*, 178 F.3d 68 (1st Cir. 1999), the Court held that a state juvenile disposition that was based on "admission of sufficient facts" did not constitute an "adjudication of guilt" for the purposes of the Sentencing Guidelines. *See* 178 F.3d at 73-77. Nine years earlier, the Court had rejected a defendant's contention that his state juvenile offenses—whose dispositions happened to be based on "admissions of sufficient facts"—were "juvenile status offenses" that could not count towards his criminal history. *United States v. Unger*, 915 F.2d 759, 761, 763 (1st Cir. 1990). The government in *DiPina* argued that *Unger*'s decision to count that particular defendant's offenses controlled its decision. This Court disagreed, emphasizing that "neither party in *Unger* raised the 'same question' as that before us today"—i.e., the legal significance of the notation "admission of sufficient facts." *DiPina*, 178 F.3d at 73. The Court therefore concluded:

> Where, in a prior decision, we have not considered an issue directly and assessed the arguments of parties with an interest in its resolution, that decision *does not bind us* in a subsequent case where the issue is adequately presented and squarely before us.

*DiPina*, 178 F.3d at 73 (emphasis added).

This Court should apply the same treatment to *Miranda-Rivera* and *Zingg*. First and foremost, neither case actually articulated a standard for pretrial detainees' inadequate medical-care claims brought under the Due Process Clause. *Miranda-Rivera* reiterated the well-worn statement that in this Circuit, "[t]he boundaries of this duty have not been plotted exactly," before noting "it is clear that they extend at least as far as the protection that the Eighth Amendment gives to a convicted prisoner" and holding that the plaintiff survived summary judgment on that subjective standard. *Miranda-Rivera*, 813 F.3d at 74. And while *Zingg* involved a pretrial detainee, based on the plaintiff's own allegations, 907 F.3d at 634, the Court analyzed Ms. Zingg's claim as arising under the Eighth Amendment's prohibition against cruel and unusual punishment and applied the subjective deliberate indifference standard, *see id.* at 633, 635, 637-38.

This is not surprising given the underlying papers in each case. In *Miranda-Rivera*, neither the appellants nor the appellees cited to, let alone discussed, *Kingsley*, which the Supreme Court decided after both principal briefs were filed.[5] The parties in *Zingg* similarly neither cited nor discussed *Kingsley*.[6] To the contrary,

---

[5] Pls./Appellants' Br., *Miranda-Rivera*, No. 14-1535 (1st Cir. Apr. 6, 2015); Response Br. for Appellees, *Miranda-Rivera*, No. 14-1535 (1st Cir. May 18, 2015); Pls./Appellants' Reply Br., *Miranda-Rivera*, No. 14-1535 (1st Cir. July 3, 2015).

[6] Br. of Pl.-Appellant Jenna Zingg, *Zingg*, No. 17-2115 (1st Cir. Feb. 15, 2018); Br. of Defs.-Appellees, *Zingg*, No. 17-2115 (1st Cir. Apr. 17, 2018); Reply Br. of Pl.-Appellant Jenna Zingg, *Zingg*, No. 17-2115 (1st Cir. May 1, 2018).

Ms. Zingg's pleadings alleged that the defendants' treatment decision "constituted deliberate indifference to [her] serious medical needs, in violation of the *Eighth Amendment's* prohibition of cruel and unusual punishment." Am. Compl. ¶ 2, *Zingg v. Groblewski*, No. 1:15-cv-10771 (D. Mass. Feb. 18, 2016) (ECF No. 22) (emphasis added). Her appellate briefing similarly focused exclusively on whether she met the subjective deliberate indifference standard. *See* Br. of Pl-Appellant Jenna Zingg, *Zingg v. Groblewski*, No. 17-2115 (1st Cir. Feb. 15, 2018).

"The most that can be said" about *Miranda-Rivera* and *Zingg* "is that the point was in the cases if any one had seen fit to raise it." *See Webster*, 266 U.S. at 511. No one did. As a result, they have no bearing on this Court's analysis of which standard should apply to pretrial detainees' Due Process claims, the question that Ms. Cox squarely raises with this appeal. *See id.* Instead, this Court is free to, and should, follow *Kingsley* and the Second, Fourth, Sixth, Seventh, and Ninth Circuits in applying the objective deliberate indifference standard.

## II. The District Court's failure to instruct the jury under the objective deliberate indifference standard was prejudicial.

Where, as here, the District Court incorrectly instructs the jury, remand is required when "the error is determined to be prejudicial based on a whole-record review." *La Plante v. Am. Honda Motor Co., Inc.*, 27 F.3d 731, 737 (1st Cir. 1994). "An error is prejudicial if it could have affected the result of the jury's deliberations." *Id.*; *see also Costa-Urena v. Segarra*, 590 F.3d 18, 26 (1st Cir. 2009) (concluding

44

prejudice where "evidence would allow (though not compel) a reasonable, properly instructed jury" to find in favor of the appellant). The District Court's objective deliberate indifference instruction in this case did just that.

Specifically, this erroneous jury instruction raised Ms. Cox's burden from establishing that the defendant-officers *should have known* of Mr. Stilphen's serious medical need and the risk of their inaction, to establishing the defendant-officers' *actual knowledge* of the same. The former can be deduced by a review of the external facts, while the latter requires the jury to take on the much more difficult task of discerning the actual contents of the defendants' inner thoughts. *Cf. Lara-Grimaldi*, 132 F.4th at 634-35 (noting subjective deliberate indifference standard authorizes factfinders to consider defendants' testimony about their personal lack of knowledge or belief about the risk of harm, whereas "the 'or should have known' prong of the objective standard for assessing deliberate indifference means that an officer's *lack* of actual knowledge is not to be considered" (emphasis in original)).

On remand from the Supreme Court, the appellate court in *Kingsley* found that this exact elevation from "establish[ing] that the officers acted in an unreasonable manner" to demonstrating that "the officers had a proscribed intent" required a new trial because it was a harmful error that "increased, significantly" the burden of proof. *Kingsley v. Hendrickson*, 801 F.3d 828, 831 (7th Cir. 2015); *see also Bell v. O'Reilly*, 972 F.3d 21, 24-25 (1st Cir. 2020) (finding prejudice and remanding where

the erroneous jury instruction increased plaintiff's burden for a reasonable accommodations claim under the ADA from showing that he had "some difficulty" performing essential functions of his job without an accommodation to demonstrating that he "needed an accommodation to perform the essential function of his job"). In view of the "whole-record" presented in this case—which a "rational jury … could have found" established objective unreasonableness on the part of the defendant-officers—this Court should reach the same conclusion. *La-Plante*, 27 F.3d at 737.

### A. All four defendant-officers were trained on the risks and prevalence of opioid intoxication and overdose and how to respond.

The jury heard clear testimony that all four defendant-officers had been trained about the prevalence, dangers, and signs of opioid intoxication and overdose, and how to respond to each situation. Appx518-522 (81:23-25, 82:23-25, 83:19-21, 84:23-85:8). This training emphasized that the area of Mass and Cass was the "biggest hot spot in 2019" for opioid use, and that 40% of all Narcan-related EMS transports "were males between the ages of 20 and 39," like Mr. Stilphen. Appx532-535(95:16-24, 96:14-97:3).

The defendant-officers were trained that an opioid overdose occurs "when too much of an opioid … fits too many receptors" in the brain, "slowing and then stopping the breathing." Appx522-523(85:23-86:5). The officers learned that opioids cause breathing to slow even before an overdose, and that "as your breathing

slows down and stops, your heart is no longer getting [oxygen] and can go into cardiac arrest." Appx523(86:19-22). The officers were trained that the symptoms of "[s]omeone who is really high" may include "nodding but can be aroused; slurred or slow speech; sleepy, intoxicated look; and then, their breathing rate … would be less than eight times a minute." Appx524(87:10-15); Appx525(88:5-8) (training officer testifying that someone can "be standing and nodding" and "conscious and nodding"). The officers were also trained that someone who was overdosing would not be arousable and would have breathing that was even slower or, ultimately, stopped completely. Appx161.

Not only were the officers taught how to identify whether a person was "really high" and "overdosing," but they were also shown how to respond in each instance. Specifically, they were taught to stimulate really high people through, for instance, sternum rubs and clapping. Appx525-526(88:9-89:6). And they were trained to administer Narcan to people who were overdosing. Appx534-535(97:12-98:9). In short, the officers were trained to "[s]timulate and observe." Appx525(88:9-15).

Critically, the defendant-officers learned that people who were really high could progress to an overdose. Appx528-529(91:11-92:4). As a result, they were trained "even if a person is really high and not overdosed, they should not be left alone." Appx530-531(93:16-94:9).

**B.    The evidence presented to the jury demonstrates that an objectively reasonable officer would have recognized and acted in response to Mr. Stilphen's serious risk of harm.**

The jury was provided with a wealth of evidence regarding Mr. Stilphen's time in BPD custody, which demonstrated that an objectively reasonable officer would have recognized and acted in response to Mr. Stilphen's serious risk of harm. The jury watched with their own eyes the video footage showing Mr. Stilphen's obviously deteriorating state in his last hours at D-4. *See generally* Appx1224-1229 (Exs. 1-6). The jury heard unrebutted medical testimony from Dr. MacDonald that Mr. Stilphen displayed clear signs that he was under the influence of opioids from the moment he was taken into BPD custody and "was at risk for overdose at the time of his arrival." Appx449(12:3-10). The jury was presented with unrebutted police practices testimony from Dr. Lyman that a reasonable officer who observed what the defendant-officers observed would not have believed that Mr. Stilphen was simply sleepy, and would have known not to leave Mr. Stilphen alone without taking further action. Appx599-600(17:4-7, 17:9-14, 17:16-19, 18:9-15); Appx622(40:17-20); Appx577(140:12-16); Appx580-581(143:20-144:5); Appx589-592(7:25-8:16, 9:13-10:1). And indeed, the jury saw an example of just such a reasonable officer—Officer Doolan—who responded to Mr. Stilphen's contorted position by kicking on the door and calling Mr. Stilphen's name in an attempt to rouse him on his first and only cell check of the night. Appx968-969(52:18-24, 53:13-21). At trial, Officer

Doolan agreed that "when he came upon [Mr. Stilphen] in his cell … he was in a position that [Officer Doolan] would describe as being one of extreme discomfort." Appx974(58:15-18).

The jury was also presented with further evidence demonstrating that each individual defendant's behavior was objectively unreasonable.

### i.    Officer Almeida.

Officer Almeida recognized Mr. Stilphen from the Mass and Cass area, and testified that people in custody overnight are "using all types of substances" and "could have drugs secreted somewhere in their body." Appx893(141:21-23); Appx895(143:7-10). In addition to this background knowledge, Officer Almeida saw Mr. Stilphen sliding down a wall while his booking photos were being taken, but took no steps to seek or provide medical care. Appx862-863(110:20-111:3). He saw Mr. Stilphen immediately fold over himself once he was dropped off at Cell 19, but he still left Mr. Stilphen alone in Cell 19. Appx1228 (Ex. 5-a at 0:53-1:16); Appx632-633(50:21-51:7). And as the night progressed, in direct conflict with his training, Officer Almeida did not check if Mr. Stilphen was responsive to stimuli or in need of medical attention when conducting his purported cell checks. *See, e.g.*, Appx870-871(118:19-119:19) (testifying that he flushed the toilet in Mr. Stilphen's cell but did not check whether Mr. Stilphen reacted); Appx877-878(125:11-126:4); Appx880-883(128:11-130:2, 131:4-21).

In total, Officer Almeida had thirteen opportunities, including seven cell checks, to determine whether Mr. Stilphen was responsive to stimuli, yet he never did so. *See* pp. 13-16, *supra*. As Dr. Lyman's unrebutted testimony established, "considering that Officer Almeida observed [Mr. Stilphen] in the booking room … and considering that Officer Almeida was the booking officer, and he did walk up and down that hallway [outside Mr. Stilphen's cell] numerous times[,] … a reasonable officer would conclude that seeing [Mr. Stilphen] hinged over would suggest that he's either severely intoxicated or he's even passed out." Appx591-592(9:10-10:1). Dr. Lyman further testified that from the time Mr. Stilphen progressed to an overdose at 4:48 AM, Officer Almeida had multiple opportunities to observe Mr. Stilphen, and a reasonable officer who had the same opportunities to observe Mr. Stilphen's condition "would know that there [are] problems with [Mr. Stilphen]," and would not have "continued to walk by th[e] cell without taking action." Appx595(13:1-6, 13:15-23). Instead, a reasonable officer "would have taken action and try to arouse him" by tapping or kicking on the door, talking to Mr. Stilphen, going inside the cell, checking if Mr. Stilphen was breathing, or shaking him. Appx595(13:15-23).

Critically, the jury heard that Mr. Stilphen was not the first detainee Officer Almeida encountered who died of an overdose while in D-4 custody. In May 2019, less than two months before Mr. Stilphen died, another pretrial detainee, Cristian

Geigel, was found dead in his cell.  Appx844(92:10-15).  Officer Almeida was the booking officer on duty the night Mr. Geigel died and conducted cell checks that night, including of Mr. Geigel's cell.  Appx844-845(92:10-93:6).  Mr. Geigel died several hours before Officer Almeida's shift began and lay dead in his cell throughout Officer Almeida's cell checks, and Officer Almeida made no attempt to rouse or otherwise check Mr. Geigel's condition.  *See* Appx935(19:5-9).  Despite having just gone through this similar experience, Officer Almeida did not take a different approach the night Mr. Stilphen died.

### ii.    Officer Picarello.

The jury heard that Officer Picarello also was aware that detainees could take drugs in their cell, testifying that "[a]t 5 in the morning in a cell, they could be on anything," including fentanyl.  Appx798(46:15-18).  Moreover, Officer Picarello testified that Mr. Stilphen "was showing signs of being addicted to opioids" throughout the booking process, including that he was "nodding in and out" and "speaking with a slurred tone," signs Officer Picarello recognized as being "characteristic[s] of someone who has a heroin or fentanyl problem."  Appx786-787(34:15-35:1); Appx789(37:12-20).

After booking, Officer Picarello had five opportunities to observe Mr. Stilphen in Cell 19.  *See* pp. 13-16, *supra*.  He observed Mr. Stilphen in the hinged position in Cell 19 and testified that this position is common for people with

"fentanyl problems." Appx798(46:7-11). One minute before Mr. Stilphen drew his last breath, Officer Picarello dropped off food and could see Mr. Stilphen fail to respond to that noise. Appx799-800(47:21-48:14); Appx1225 (Ex. 2-g at 9:13-9:24); Appx1228 (Ex. 5-g at 9:05-9:17). But each time Officer Picarello walked by—including when Mr. Stilphen was folded over himself with his face in his food—he took no action. Appx823(71:8-10); *see also* Appx1228 (Ex. 5-g at 9:05-10:25).

As Dr. Lyman testified, a reasonable officer who, like Officer Picarello, observed Mr. Stilphen "wobbling" and "nodding off" throughout the booking process and later hinged over in his cell "would conclude that … either he's severely impaired or he might even be passed out" and that "[h]e needs to be checked on to verify that he's responsive." Appx589-590(7:25-8:16).

### iii.    Officers Bertocchi and Freire.

Although Officers Bertocchi and Freire did not interact with Mr. Stilphen once they left him alone in Cell 19, a rational jury could also conclude based on the whole record that their behavior was likewise objectively unreasonable.

The jury heard Officer Bertocchi testify that he observed Mr. Stilphen was lethargic and thought Mr. Stilphen may have taken drugs that day. Appx700(118:7-19). He also witnessed Mr. Stilphen struggle to stand up straight during the booking process and even had to help steady Mr. Stilphen. Appx708(126:6-9, 126:20-22);

Appx710(128:6-17); Appx1226 at 6:36-12:36.    Moreover, Officer Bertocchi

observed Mr. Stilphen seated in the hinged position on three separate occasions in

the holding cell and immediately upon placement in Cell 19.  Appx705(123:3-14);

Appx716-717(134:17-22, 135:5-136:4); Appx765(13:11-15).  Yet Officer Bertocchi

failed to inform anyone about Mr. Stilphen's condition or seek or provide any

medical treatment, despite also knowing that Cristhian Geigel had passed away in a

District 4 cell from an overdose just weeks earlier.  Appx718(136:1-16); Appx696-

697(114:10-115:2).

    Dr. Lyman testified that "a reasonable officer who had [the] opportunity to

observe what Officer Bertocchi had the opportunity to observe that evening" would

not "have walked away … and left [Mr. Stilphen] alone in [the] cell without taking

further action."  Appx580-581(143:25-144:5).  Instead, as Dr. Lyman explained, a

reasonable officer observing what Officer Bertocchi observed "would have been

concerned that [Mr. Stilphen] was in a state of emergency, experiencing extreme

intoxication or impairment, and was in need of either medical attention at that point

or close monitoring, meaning efforts to continually ensure that he's breathing, that

he's arousable, and that he is not declining in his state of intoxication."  Appx579-

580(142:23-143:5).

    For her part, despite seeing Mr. Stilphen nodding throughout the booking

process and collapsing into the hinged position upon his placement in Cell 19,

Officer Freire neither sought medical attention for Mr. Stilphen nor informed anyone of his condition.  Appx683(101:5-12).  As Dr. Lyman testified, "a reasonable officer who had observed what Officer Freire had observed that evening" would not "have left [Mr. Stilphen] alone in his cell without taking further action."  Appx577(140:12-15).  Instead, as Dr. Lyman explained, a reasonable officer observing what Officer Freire had observed "would have recognized the fact that [Mr. Stilphen] was experiencing a possible overdose or behaviors consistent with a person who might be so intoxicated they are in a state where they might overdose.  And, therefore, take action."  Appx576-577(139:24-140:7).

### C.    The prejudicial impact of the jury instruction.

A "reasonable, properly instructed jury" could have concluded from (1) the defendant-officers' training, (2) Officer Doolan's response during his first and only cell check, (3) Dr. Lyman's unrebutted expert testimony, and (4) the wealth of record evidence concerning Mr. Stilphen's condition and the defendant-officers' actions that night that the defendant-officers should have known of Mr. Stilphen's serious medical need and the risk of their action, and therefore were objectively unreasonable in failing to adequately monitor and seek medical treatment for Mr. Stilphen. *See Costa-Urena v. Segarra*, 590 F.3d 18, 26 (1st Cir. 2009).  Yet the jury was not presented with that question.  Instead, the District Court instructed the jury both before and after the submission of evidence that Ms. Cox's burden required

proof of what each defendant actually "knew of and disregarded," because deliberate indifference "means affirmatively choosing to do the wrong thing or doing nothing." Appx322(9:11-13); Appx1175(114:14-24). Defense counsel echoed this exact language no fewer than five times during closing arguments, Appx1099(38:8-9); Appx1101(40:10-12, 40:24-25); Appx1116(55:16-56:1); Appx1128(67:5-6), and expressly stated that "this case is not about the reasonable officer," Appx1116-1117(55:16-56:1). Because the proper standard turns *not* on the subjective knowledge of the individual defendants, *but rather* on the objective reasonableness of their actions, and because a rational jury could find that the whole record satisfies this burden, the erroneous instruction was prejudicial. *See Costa-Urena*, 590 F.3d at 26 (instructional error was prejudicial where evidence "would allow (though not compel) a reasonable, properly instructed jury" to find defendants had established contested defense).

## CONCLUSION

Three quarters of the circuit courts have expressly addressed the proper standard to analyze pretrial detainees' Due Process claims post-*Kingsley*. This Circuit should now join the majority to follow the clear constitutional text and Supreme Court precedent and adopt the objective deliberate indifference standard. The District Court's failure to instruct on this standard was meaningful. The jury received evidence that demonstrated that Officers Almeida, Picarello, Bertocchi, and

Freire should have known of Mr. Stilphen's serious medical need and the risk of their inaction. If they had acted in an objectively reasonable manner, Mr. Stilphen would still be here today. Instead, their repeated failures to act ensured that Ms. Cox will never see her son again. Because a reasonable jury could have concluded on the whole record that the four officers were liable under the proper objective deliberate indifference standard, this Court should reverse and remand for a new trial.

Date:  May 23, 2025

Respectfully submitted,

*/s/ Alexandra D. Valenti*

Jessie J. Rossman (No. 1161236)
Adriana Lafaille (No. 1150582)
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org

Robert Frederickson III (No. 1207720)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
rfrederickson@goodwinlaw.com

Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

Rohiniyurie Tashima (No. 1215338)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
rtashima@goodwinlaw.com

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 12,728 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

Dated:  May 23, 2025

*/s/ Alexandra D. Valenti*
Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

*Counsel for Plaintiff-Appellant*

57

**CERTIFICATE OF SERVICE**

I, Alexandra D. Valenti, hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on May 29, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  May 29, 2025

*/s/ Alexandra D. Valenti*
Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

*Counsel for Plaintiff-Appellant*

ADDENDUM

# TABLE OF CONTENTS

Judgment as to Ismael Almeida (ECF No. 212) ...........................................ADD001

Judgment as to Paul Michael Bertocchi (ECF No. 213).............................ADD002

Judgment as to Catia Freire (ECF No. 214)..................................................ADD003

Judgment as to Brian Picarello (ECF No. 215) ...........................................ADD004

Order re Entry of Partial Final Judgment (ECF No. 211)...........................ADD005

Electronic Order re Applicable Standard (ECF No. 170)...........................ADD012

Excerpted Jury Instructions re Standard (ECF No. 192) ............................ADD014

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * * * * * * * * * * * *
Lynnel Cox
     Plaintiff

                               CIVIL ACTION NO.:
         v.                  1:22-cv-11009-RGS


City of Boston et al
     Defendants
* * * * * * * * * * * * * * * * * * * * * * * * * * *

### **JUDGMENT**
December 19, 2024

Stearns, D.J.

In accordance with the Jury Verdict returned on August 19, 2024 and the court's Order entered on December 18, 2024, judgment is entered in favor of defendant Ismael Almeida, the jury having found that Ismael Almeida is not liable on all claims against him.  All claims against Ismael Almeida are hereby dismissed.

      SO ORDERED.

                            /s/ Richard G. Stearns
                            RICHARD G. STEARNS
                            United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * * * * * * * * * * *
Lynnel Cox
      Plaintiff

                                     CIVIL ACTION NO.:
           v.                      1:22-cv-11009-RGS


City of Boston et al
      Defendants
* * * * * * * * * * * * * * * * * * * * * * * * * *

## **JUDGMENT**
December 19, 2024

Stearns, D.J.

In accordance with the Jury Verdict returned on August 19, 2024 and the court's Order entered on December 18, 2024, judgment is entered in favor of defendant Paul Michael Bertocchi, the jury having found that Ismael Almeida is not liable on all claims against him.  All claims against Paul Michael Bertocchi are hereby dismissed.

      SO ORDERED.

                              /s/ Richard G. Stearns
                              RICHARD G. STEARNS
                              United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * * * * * * * * * * * *
Lynnel Cox
      Plaintiff

                          CIVIL ACTION NO.:
          v.                   1:22-cv-11009-RGS


City of Boston et al
      Defendants
* * * * * * * * * * * * * * * * * * * * * * * * * * *

## **JUDGMENT**
December 19, 2024

Stearns, D.J.

In accordance with the Jury Verdict returned on August 19, 2024 and the court's Order entered on December 18, 2024, judgment is entered in favor of defendant Catia Freire, the jury having found that Catia Freire is not liable on all claims against him. All claims against Catia Freire are hereby dismissed.

      SO ORDERED.

                        /s/ Richard G. Stearns
                        RICHARD G. STEARNS
                        United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * * * * * * * * * * * *
Lynnel Cox
     Plaintiff

                                 CIVIL ACTION NO.:
        v.                      1:22-cv-11009-RGS


City of Boston et al
     Defendants
* * * * * * * * * * * * * * * * * * * * * * * * * * *

**<u>JUDGMENT</u>**
December 19, 2024

Stearns, D.J.

In accordance with the Jury Verdict returned on August 19, 2024 and the court's Order entered on December 18, 2024, judgment is entered in favor of defendant Brian Picarello, the jury having found that Brian Picarello is not liable on all claims against him.  All claims against Brian Picarello are hereby dismissed.

     SO ORDERED.

                              /s/ Richard G. Stearns
                              RICHARD G. STEARNS
                              United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11009-RGS

LYNNEL COX,
as Administrator of the Estate of Shayne R. Stilphen

v.

CITY OF BOSTON, ISMAEL ALMEIDA, PAULMICHAEL BERTOCCHI,
CATIA FREIRE, and BRIAN PICARELLO

ORDER

December 18, 2024

STEARNS, D.J.

Before the court is plaintiff Lynnel Cox's request for entry of separate and final judgment for the individual officers found not liable by a jury on civil rights claims related to the death of her son Shayne Stilphen, who died of an opioid overdose while in Boston Police Department custody.[1]  Cox also asks the court to stay her bifurcated Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, claim against the City of Boston pending a ruling by the Court of Appeals on her primary claims.

The court invited further briefing from the City of Boston, Cox, and the United States Department of Justice (DOJ) (by way of an amicus filing) on

---

[1] The individual defendants found not liable are Officers Ismael Almeida, Paul Michael Bertocchi, Catia Freire, and Brian Picarello.

the viability of Cox's ADA claim.  With the benefit of this briefing, the court remains convinced that its original ruling is correct in its essentials that "[d]rug addiction is a disability covered by Title II," and that "Title II's implementing regulations prohibit a public entity from denying health services 'to an individual on the basis of that individual's current illegal use of drugs.'"  Dkt. # 104 at 15 n.9, quoting 28 C.F.R. § 35.131(b)(1).  Although the City of Boston cites two new cases as contrary authority, *see Baustian v. Louisiana*, 929 F. Supp. 980 (E.D. La. 1996), and *Ross v. City of Dallas*, 2023 WL 8436060 (N.D. Tex. Dec. 4, 2023), the court is persuaded by the DOJ amicus filing that the cases are distinguishable.  *See* Dkt. # 207 at 7.

Now concluding that Cox's § 1983 and ADA claims are sufficiently distinct, the court will also consider Cox's request to enter separate and final judgment for the individual officers and to stay the ADA claim against the City of Boston pending appeal.  *See* Dkt. # 194 at 1; Dkt. # 206 at 6.  Federal Rule of Civil Procedure 54(b) "permits the entry of final judgment as to fewer than all the parties or claims in a multi-party action, thus clearing the way for earlier-than-usual appeals, 'upon an express determination that there is no just reason for delay' in entering judgment." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 579 (1st Cir. 1994), quoting Fed. R. Civ. P. 54(b).

The First Circuit uses a two-step approach to determine whether entry of separate and final judgment is appropriate. "First, the ruling underlying the proposed judgment must itself be final in the sense that it disposes completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally." *Id.* at 580. That requirement is satisfied here, as the jury verdict disposed of all claims against the individual officers.[2]

"Once the finality hurdle has been cleared, the district court must determine whether, in the idiom of the rule, 'there is no just reason for delay' in entering judgment." *Spiegel v. Trs. of Tufts Coll.*, 843 F.2d 38, 43 (1st Cir. 1998). As the First Circuit has noted:

> The second step of the *Spiegel* pavane is harder to master. It requires tracing the interrelationship between, on one hand, the legal and factual basis of the claims undergirding the proposed

---

[2] The court bifurcated for trial the claims against the individual officers from those against the City of Boston. The claims against the individual officers – which included failing to provide adequate medical care to Stilphen while he was in Boston Police Department custody, in derogation of Stilphen's Fourteenth Amendment right, 42 U.S.C. § 1983, and causing Stilphen's wrongful death, Mass. Gen. Laws ch. 229, § 2 – proceeded to trial in August of 2024. A jury found the officers not liable on all the claims against them. Following the trial, the court dismissed Cox's *Monell* (failure to train) claim against the City of Boston. *See* Dkt. # 202 at 15, citing *Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir. 1996) (holding that a "[c]ity cannot be held liable absent a constitutional violation by its officers"). The individual officers are not defendant-parties to Cox's remaining ADA claim, which is against the City of Boston.

3

judgment (*i.e.*, the jettisoned claims), and on the other hand, the legal and factual basis of the claims remaining in the case.

*Maldonado-Denis*, 23 F.3d at 580.   In *Spiegel*, the First Circuit cited a Third Circuit opinion, which it found to provide a "general compendium" of factors "helpful as a guide." *Spiegel*, 843 F.2d at 43 n.3, citing *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F2d 260, 364 (3d Cir. 1975).   Such factors include: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Allis-Chalmers Corp.*, 521 F.2d at 364.

The court is of the view that all of these factors counsel in favor of an interpolated entry of final judgment for the individual officers.   The court is confident that the First Circuit will not be "obliged to consider the same issue a second time." *Id.*   Here, the parties are distinct – Cox's Title II claim is against the City as a municipal entity, as opposed to the claims against the individual officers – and the remedies are different – for example, unlike in

4

a § 1983 or wrongful death suit, punitive damages are unavailable in private suits brought under § 202 of the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Moreover, the factual and legal issues in the individual officers' trial, including the governing standard for a pretrial detainee's Fourteenth Amendment inadequate care claim under § 1983, do not overlap with, and would not have preclusive effect on, the outcome of the Title II jury trial against the City of Boston. *See Quinn v. City of Bos.*, 325 F.3d 18, 27 (1st Cir. 2003) (holding "[s]uch a lack of overlap" between the issue to be decided on appeal and the issues still pending in this court "strongly supports the finding of no just reason for delay (and, thus, the entry of a partial final judgment under Rule 54(b))"); *Vazquez v. Mun. of Juncos*, 756 F. Supp. 2d 154, 168 (D.P.R. 2010) (finding that a jury trial is available for a Title II claim that alleges intentional discrimination and seeks monetary damages). Cox's ADA claim seeks redress for the City of Boston's alleged discrimination based on Stilphen's Opioid Use Disorder in violation of Title II of the ADA, not redress for the individual officers' alleged unconstitutional denial of Stilphen's medical care in the face of a serious medical need. Dkt. # 208 at 5.

Similarly, there is no possibility "that the need for review [in the Court of Appeals] might . . . be mooted by future developments in the district court," because there is nothing to be decided in the district court regarding

the ADA claim that would obviate the need for the Court of Appeals to decide the governing standard for a pretrial detainee's Fourteenth Amendment inadequate care claim. *Allis-Chalmers Corp.*, 521 F.2d at 364. Nor are there any counterclaims or crossclaims involving the individual officers or the City of Boston that "could result in set-off against the judgment sought to be made final." *Id.*

Lastly, this ruling may prevent the possibility of multiple trials. *See Allis-Chambers Corp.*, 521 F.3d at 364 (noting that "miscellaneous factors" to consider may include economic considerations and shortened trial time). Assuming the court proceeded to trial on the ADA claim against the City of Boston and that Cox, after the trial, as she has made clear that she will do, *see* Dkt. # 208 at 5 n.3., successfully appeals the jury verdict in favor of the individual officers, there would be potentially two additional trials. There would be another jury trial against the individual officers under the different legal standard, and if the officers were found liable, a second trial[3] against the City of Boston on the *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)

---

[3] Cox's *Monell* claim against the City of Boston would concern prior bad act evidence that would be unfairly prejudicial to the individual officers if the claims against the City of Boston and individual officers were tried together. *See Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015). Because this would be a § 1983 action for damages, plaintiff would be entitled to a jury trial. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 709 (1999).

6

claim.  This court previously dismissed the *Monell* claim because the jury determined under the deliberate-indifference standard that the officers did not violate Stilphen's constitutional rights.  *See* Dkt. # 202 at 15, citing *Evans v. Avery*, 100 F.3d 1033, 1040 (1st Cir. 1996).  By entering separate and final judgment for the individual officers and staying the ADA claim, the court may combine Cox's ADA claim and potentially revived *Monell* claim against the City of Boston into one trial.

For the above reasons, the court finds that "there is no just reason for delay."  Fed. R. Civ. P. 54(b).  The court will enter separate and final judgment for the individual officers and will stay the ADA claim against the City of Boston pending appeal.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

Case: 25-1078    Document: 00118291972    Page: 79    Date Filed: 05/29/2025    Entry ID: 6724551
5/28/25, 4:27 PM                        CM/ECF - USDC Massachusetts - Version 6.3.3.5 as of 4/21/2025

APPEAL,STAYED

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:22-cv-11009-RGS

Cox v. City of Boston et al                          Date Filed: 06/27/2022
Assigned to: Judge Richard G. Stearns                Jury Demand: Both
Case in other court:  USCA - First Circuit, 25-01078 Nature of Suit: 555 Prison Condition
Cause: 42:1983 Civil Rights Act                      Jurisdiction: Federal Question

### Plaintiff

**Lynnel Cox**                          represented by   **Alexandra D. Valenti**
*as administrator of the estate of Shayne R.*           Goodwin Procter LLP
*Stilphen*                                              620 Eighth Avenue
                                                        New York, NY 10018-1405
                                                        212-813-8800
                                                        Email: avalenti@goodwinlaw.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Christine Potkay**
                                                        Goodwin Procter LLP
                                                        620 Eighth Avenue
                                                        New York, NY 10018-1405
                                                        212-813-8800
                                                        Email: CPotkay@goodwinlaw.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gabriella Montes**
                                                        Goodwin Procter LLP
                                                        The New York Times Building
                                                        620 Eigth Avenue
                                                        New York, NY 10018
                                                        917-229-7822
                                                        Email: gmontes@goodwinlaw.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Matthew Ginther**
                                                        Goodwin Procter LLP
                                                        1900 N St. NW
                                                        Washington, DC 20009
                                                        202-346-4324
                                                        Email: mginther@goodwinlaw.com
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

Add012

| | | parties; Jury trial to begin August 12, 2024 at 9AM. (Court Reporter: Catherine Zelinski at CAL.Zelinski.Steno@gmail.com.)(Attorneys present: Valenti, Potkay, Franco, Bartlett, Ginther, Rossman, Lafaille, Burlingame, Whitesell, Maas) (Maynard, Timothy) (Entered: 08/12/2024) |
|---|---|---|
| 08/09/2024 | 170 | Judge Richard G. Stearns: ELECTRONIC ORDER entered. It is true, as plaintiff argues, that several Circuit Courts have extended the reasoning of *Kingsley* to the evaluation of pretrial detainee due process claims. *See, e.g., Castro v. City of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (extending *Kingsley*'s objective standard for a failure to protect to a pretrial detainee's claim that defendants' act in leaving him alone in a cell with a violent arrestee exposed him to an unreasonable risk of harm). It is also true that nearly all the First Circuit cases looking to the Eighth Amendment for guidance in applying a deliberate indifference standard predate *Kingsley*. But as this court has previously observed, while there may be "much to be said" for extending *Kingsley* to pretrial detainee due process claims, it is constrained by pre-*Kingsley* First Circuit precedent unless and until the First Circuit indicates otherwise. *See Couchon v. Cousins*, 2018 WL 4189694, at *6 (D. Mass. Aug. 31, 2018). And it remains the fact that the two post-*Kingsley* First Circuit cases involving pretrial detainee medical care claims of which the court is aware have applied the Eighth Amendment deliberate indifference standard. *See Zingg v. Groblewski*, 907 F.3d 630, 634-635 (1st Cir. 2018); *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016). This court, consistent with most district courts in the Circuit, *see, e.g., Gomes v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 132, 147148 (D.N.H. 2020), is not inclined to blaze trails for its court of higher authority and will apply a standard of deliberate indifference to Cox's Fourteenth Amendment claim. (RGS, law4) (Entered: 08/09/2024) |
| 08/09/2024 | 171 | *Joint* Witness List by Lynnel Cox. (Frederickson, Robert) (Entered: 08/09/2024) |
| 08/12/2024 | 172 | Proposed Jury Instructions by Lynnel Cox. (Frederickson, Robert) (Entered: 08/12/2024) |
| 08/12/2024 | 173 | *Updated Joint* Exhibit List *and List of Plaintiff's Exhibits* by Lynnel Cox.. (Frederickson, Robert) (Entered: 08/12/2024) |
| 08/12/2024 | 175 | Electronic Clerk's Notes for proceedings held before Judge Richard G. Stearns: Jury Trial Day 1 held on 8/12/2024. Jury emapanelment; Jury of 8 seated and sworn; Opening statements; Plaintiff calls witness Lynnel Cox; Evidence entered; Jury excused; Trial to resume August 13, 2024 at 9AM. (Court Reporter: Jamie Halpin at jkhhalpin@gmail.com.)(Attorneys present: Valenti, Potkay, Franco, Bartlett, Ginther, Rossman, Lafaille, Burlingame, Whitesell, Maas) (Maynard, Timothy) (Entered: 08/13/2024) |
| 08/13/2024 | 176 | BRIEF by Lynnel Cox *Bench Brief Concerning Evidence Related to Death of Christhian Geigel and Plaintiffs Proffer of Same*. (Frederickson, Robert) (Entered: 08/13/2024) |
| 08/13/2024 | 177 | Electronic Clerk's Notes for proceedings held before Judge Richard G. Stearns: Jury Trial held on 8/13/2024. Cross-examination of Lynnel Cox; Plaintiff calls witness Dr. Ross MacDonald, cross-examination, redirect, recross; Plaintiff calls witness Officer Patrick Higgins, cross-examination, redirect; Plaintiff calls witness Detective Philip Bliss; Plaintiff begins direct examination of Michael Lyman; Evidence entered; Jury excused; Trial to resume August 14, 2024 at 9 AM. (Court Reporter: Jamie Halpin at jkhhalpin@gmail.com.)(Attorneys present: Valenti, Potkay, Franco, Bartlett, Ginther, Rossman, Lafaille, Burlingame, Whitesell, Maas) (Maynard, Timothy) (Entered: 08/14/2024) |
| 08/14/2024 | 178 | Electronic Clerk's Notes for proceedings held before Judge Richard G. Stearns: Jury Trial Day 3 held on 8/14/2024. Plaintiff resumes direct examination of Michael Lyman, cross-examination, redirect, recross; Plaintiff calls witness Catia Freire, cross-examination, |

Add013

```
 1                   UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MASSACHUSETTS

 3

 4    _____

 5    Lynnel Cox, as administrator of
      the estate of Shayne R. Stilphen,
 6
                      Plaintiff,         Civil Action
 7                                       No. 22-CV-11009-RGS
      V.
 8                                       August 19, 2024
      City of Boston, et al,             9:00  a.m.
 9
                      Defendants.
10    _____

11

12

13

14         BEFORE THE HONORABLE RICHARD G. STEARNS

15             UNITED STATES DISTRICT COURT

16          JOHN J. MOAKLEY U.S. COURTHOUSE

17                 1 COURTHOUSE WAY

18               BOSTON, MA  02210

19

20

21

22
                JAMIE K. HALPIN, RPR, RMR
23                Official Court Reporter
             John J. Moakley U.S. Courthouse
24            1 Courthouse Way, Room 5205
                  Boston, MA  02210
25                jkhhalpin@gmail.com
```

1    APPEARANCES:

2

3    FOR THE PLAINTIFF:

4    Alexandra D. Valenti
     Goodwin Procter LLP
5    620 Eighth Avenue
     New York, NY 10018-1405
6    212-813-8800
     Email: Avalenti@goodwinlaw.com

7
     Wrenne Bartlett
8    Goodwin Procter LLP
     620 Eighth Avenue
9    New York, NY 10018-1405
     212-813-8800
10   Email: Wbartlett@goodwinlaw.com

11   Jessie J. Rossman
     ACLU of Massachusetts
12   One Center Plaza
     Suite 850
13   617-482-3170
     Email: Jrossman@aclum.org

14
     Nicholas R. Franco, III
15   Goodwin Procter LLP
     100 Northern Avenue
16   Boston, MA 02210
     617-570-1214
17   Email: Nfranco@goodwinlaw.com

18   Adriana Lafaille
     ACLU of Massachusetts
19   One Center Plaza
     Suite 850
20   Boston
     Boston, MA 02108
21   617-482-3170
     Email: Alafaille@aclum.org

22
     Matthew Ginther
23   Goodwin Procter LLP
     1900 N St. NW
24   Washington, DC 20036
     202-346-4324
25   Email: Mginther@goodwinlaw.com

```
 1   Rohiniyurie Tashima
     Goodwin Procter LLP
 2   1900 N Street, NW
     Washington DC, DC 20036
 3   202-346-4437
     Email: Rtashima@goodwinlaw.com
 4
     Isabel Burlingame
 5   ACLU of Massachusetts
     1 Center Plaza
 6   Suite 850
     Boston, MA 02108
 7   617-482-3170
     Email: Iburlingame@aclum.org
 8

 9        FOR THE DEFENDANTS:

10
     Edward F. Whitesell, Jr.
11   City Of Boston Law Department
     One City Hall Plaza
12   Room 615
     Boston, MA 02201
13   617-635-4045
     Email: Edward.whitesell@boston.gov
14
     Randall F. Maas
15   City Of Boston Law Department
     One City Hall Plaza
16   Room 615
     Boston, MA 02201
17   617-635-4042
     Email: Randall.maas@boston.gov
18

19

20

21

22

23

24

25
```

1    expert testimony is required.  In a case like this, the option

2    of calling an expert witness is left entirely to the discretion

3    of the lawyer.

4         In deciding whether to believe a witness, keep in mind

5    that people sometimes forget things or get confused or remember

6    an event differently.  Memory is not always reliable, and when

7    someone recounts a story twice, it will seldom be identical in

8    every detail, unless, of course, it is a memorized lie or the

9    witness is possessed of extraordinary perception and recall.

10   It's for you to decide whether any contradictions in a witness'

11   testimony are innocent lapses of memory or intentional

12   falsehoods.  That may depend on whether important facts or

13   small details are at issue and how important the facts might

14   have appeared to the witness at the time they were perceived.

15        Now let me turn to the legal claims in the case.  The

16   Federal Civil Rights Act is codified as 14 United States Code

17   Section 1983.  It states in relevant part, the language is a

18   bit ancient and archaic but I think you'll get a sense:

19        Every person who, under color of any statute,

20   ordinance, regulation, custom or usage of any state or

21   territory, suggests or causes to be subjected, any citizen of

22   the United States or other person within the jurisdiction

23   thereof, to the deprivation of any rights, privileges or

24   immunities secured by the Constitution and laws, shall be

25   liable to the party injured.

1          Ms. Cox must prove that the actions of one or more of

2     the defendants deprived Mr. Stilphen of a right secured by the

3     Constitution or laws of the United States.  In this regard, Ms.

4     Cox alleges that the officers violated Mr. Stilphen's

5     Fourteenth Amendment right to receive adequate care for his

6     serious medical needs being detained in the custody of the

7     Boston Police Department.

8          To establish a claim for a violation of the Fourteenth

9     Amendment under Section 1983, Ms. Cox must prove four things,

10    or as his lawyers would say, elements of her case, by a

11    preponderance of the evidence.  They are:

12          The a defendant acted under color of state law;

13          That Mr. Stilphen had a serious medical need;

14          That a defendant's acts were done with deliberate

15    indifference, the requisite state of mind as I will define it

16    for you;

17          And that a defendant's acts were a proximate or

18    substantial cause of injury to Mr. Stilphen.

19          Acting under color of law means acting or purporting

20    to act in the performance of official duties.  The parties do

21    not dispute that the defendant officers in this case were at

22    all relevant times acting pursuant to their authority as police

23    officers.  In other words, the first statutory element has been

24    satisfied.

25          A serious medical need is a condition that a

1     reasonable physician or a reasonable adult lay person would

2     deem to require treatment and which if left untreated could

3     result in further significant injury or death.  A significant

4     risk of future harm is sufficient to demonstrate a serious

5     medical need.  There is no requirement that an individual be on

6     the verge of death to have a serious medical need or that a

7     harm is certain to occur if treatment is delayed or denied.

8            Deliberate indifference in a Fourteenth Amendment

9     context describes a reckless or intentional neglect by a police

10    officer of a detainee's serious medical needs.  Mere negligence

11    or mistake, on the other hand, of the kind giving rise to a

12    claim of medical malpractice, does not rise to the standard of

13    deliberate indifference.

14           To establish deliberate indifference, a plaintiff must

15    prove by a preponderance of the evidence that a defendant had a

16    culpable state of mind in the sense that he or she knew of and

17    disregarded an excessive risk to a detainee's health and

18    safety.  The defendant must both be aware of facts from which

19    the inference could be drawn that a substantial risk of serious

20    harm exists, and the defendant must also draw the inference.

21    In plain-spoken terms, deliberate indifference means

22    affirmatively choosing to do the wrong thing or doing nothing

23    despite knowing of a substantial risk of serious harm to

24    another.  The duty to respond to a serious medical need is the

25    same when that serious medical need is one where the detainee's

1    own actions related to, for instance, a drug overdose, is

2    involved in creating a risk of harm.  The law does not require

3    perfection.  Even where a defendant officer is fully aware of

4    the risk of harm, he or she may be found free from liability if

5    they responded reasonably to the risk, even if the harm was not

6    ultimately averted.

7          The test does not require that the plaintiff prove

8    that an officer intended to cause a detainee harm.  It is

9    enough that the officer acted unreasonably or failed to act

10   despite his or her knowledge of a substantial risk of serious

11   harm to the detainee.  You may conclude that a defendant was

12   aware of a substantial risk of serious harm based on the fact

13   that a risk was obvious.  A defendant is also not permitted to

14   be willfully blind to the risk, meaning that the defendant may

15   not simply bury his or her head in the sand in the face of

16   obvious facts and circumstances.

17         In this case, the defendants interacted with

18   Mr. Stilphen during and for different periods of time.  When

19   considering each defendant's liability, you must determine

20   whether Mr. Stilphen had a serious medical need during any

21   relevant time he was around that specific defendant, and if so,

22   whether the defendant's actions or failure to act in response

23   to the serious medical need was deliberately indifferent.  Your

24   analysis of deliberate indifference for each individual

25   defendant must consider the cumulative information that the

1    defendant had with respect to Mr. Stilphen on the night of July

2    14, 2019.

3         Ms. Cox must prove that the defendants acted or failed

4    to act intentionally or with reckless indifference to

5    Mr. Stilphen's right to receive adequate medical care.  An act

6    is intentional if it is done knowingly, that is, if it is done

7    voluntarily and deliberately and not because of mistake,

8    accident, negligence, or other innocent reason.  An act is

9    reckless if it is done in conscious disregard of its

10   substantial risk of serious harm.

11        The fourth and final element that Ms. Cox must prove

12   is that at least one defendant's act or failure to act was a

13   proximate cause of Mr. Stilphen's death.  Proximate cause means

14   that there must be a causal connection between a defendant's

15   actions and a plaintiff's injuries.  An act or omission is a

16   proximate cause if it was a substantial factor in bringing

17   about or causing an injury, or stated another way, that the

18   injury was a reasonably foreseeable consequence of a

19   defendant's acts or failure to act.  You must also decide

20   whether the injury would not have occurred but for defendant's

21   acts for failure to act, meaning that if a defendant had not

22   acted with deliberate indifference, then it is more likely than

23   not that the harm would not have occurred.  In this regard, you

24   are not required to find that a defendant's actions were the

25   sole cause of Mr. Stilphen's death.