No. 25-1078

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

LYNNEL COX, as administrator of the Estate of Shayne R. Stilphen
*Plaintiff-Appellant*,

v.

ISMAEL ALMEIDA; PAUL MICHAEL BERTOCCHI; CATIA FREIRE; BRIAN
PICARELLO,

*Defendants-Appellants*,

BOSTON POLICE DEPARTMENT; JOHN/JANE DOES 1-2; DAVID
MARSHALL; CITY OF BOSTON,

*Defendants*.

On Appeal from the United States District Court
for the District of Massachusetts, No. 1:22-cv-11009 (Stearns, J.)

**Plaintiff-Appellant's Reply Brief**

Jessie J. Rossman (No. 1161236)
Adriana Lafaille (No. 1150582)
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org

Robert Frederickson III (No. 1207720)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
rfrederickson@goodwinlaw.com

October 6, 2025

Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

Rohiniyurie Tashima (No. 1215338)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
rtashima@goodwinlaw.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................6

I. Objective deliberate indifference is the proper standard for pretrial
detainees' Fourteenth Amendment inadequate medical care claims. ..............6

    A. The scope of *Kingsley*'s reasoning is broader than the officers'
retelling. ...................................................................................................6

    B. An objective standard comports with the courts' admonition that Due
Process claims require more than negligence. ........................................9

    C. *Short*'s reference to pretrial detainees' failure to prevent suicide
claims is appropriate. ............................................................................11

II. The objective deliberate indifference standard applies to this case. .............13

    A. *Miranda-Rivera* and *Zingg* did not address the boundaries of the
Fourteenth Amendment's Due Process protections for pretrial
detainees......................................................................................................13

    B. It is appropriate and necessary to apply the objective standard to the
facts of this case. ...................................................................................16

III. This case should be remanded for a new trial under the objective
deliberate indifference standard....................................................................20

    A. The officers are not entitled to qualified immunity...............................20

    B. The district court's instructions prejudiced Ms. Cox............................24

CONCLUSION ................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agostini v. Felton*,
521 U.S. 203 (1997)................................................................8

*Bell v. Wolfish*,
441 U.S. 520 (1979)................................................................7

*Brawner v. Scott Cnty.*,
14 F.4th 585 (6th Cir. 2021) .............................................6, 8, 9, 19, 20

*Castro v. Cnty. of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) .................................................9, 10

*City of Canton v. Harris*,
489 U.S. 378 (1989)................................................................8

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)...............................................................20

*Crawford-El v. Britton*,
523 U.S. 574 (1998)...............................................................21

*Darnell v. Pineiro*,
849 F.3d 17 (2d Cir. 2017) .................................................9, 11, 19, 20

*Dunn v. Barry*,
2021 WL 1967883 (D. Mass. May 17, 2021)....................................14

*Elliott v. Cheshire Cnty.*,
940 F.2d 7 (1st Cir. 1991).......................................................11

*Estelle v. Gamble*,
429 U.S. 97 (1976)...............................................................13

*Eves v. LePage*,
927 F.3d 575 (1st Cir. 2019)..............................................3, 20, 21

*Farmer v. Brennan*,
    511 U.S. 825 (1994)...........................................................................7

*Gomes v. DHS*,
    460 F. Supp. 3d 132 (D.N.H. 2020)..................................................14

*Gordon v. Cnty. of Orange*,
    888 F.3d 1118 (9th Cir. 2018) .....................................................6, 19

*Helphenstine v. Lewis Cnty.*,
    60 F.4th 305 (6th Cir. 2023) ..................................................4, 20, 22

*Hulon v. City of Lansing*,
    2025 WL 817492 (6th Cir. Mar. 14, 2025) ..................................4, 22

*Kingsley v. Hendrickson*,
    576 U.S. 389 (2015)...............................................................7, 9, 10

*Kingsley v. Hendrickson*,
    801 F.3d 828 (7th Cir. 2015) ......................................................22, 24

*La Plante v. Am. Honda Motor Co.*,
    27 F.3d 731 (1st Cir. 1994) ................................................................24

*Lara-Grimaldi v. Cnty. of Putnam*,
    132 F.4th 614 (2d Cir. 2025) ...............................................................6

*Lawler ex rel. Lawler v. Hardeman Cnty.*,
    93 F.4th 919 (6th Cir. 2024) .........................................................4, 22

*McKenney v. Mangino*,
    873 F.3d 75 (1st Cir. 2017)................................................................18

*MGH v. City of Revere*,
    463 U.S. 239 (1983)............................................................................8

*Miranda v. Cnty. of Lake*,
    900 F.3d 335 (7th Cir. 2018) ......................................6, 9, 10, 19, 20

*Miranda-Rivera v. Toledo-Davilla*,
    813 F.3d 64 (1st Cir. 2016)................................................2, 3, 14, 22

*Mlodzinski v. Lewis*,
    648 F.3d 24 (1st Cir. 2011)...................................................................18

*Oak Hill Hometown Pharm. v. Dhillon*,
    418 F. Supp. 3d 124 (S.D. W. Va. 2019).............................................5

*Penn v. Escorsio*,
    764 F.3d 102 (1st Cir. 2014)...............................................................13

*Pittman v. Madison Cnty.*,
    108 F.4th 561 (7th Cir. 2024) ............................................................10

*Sandoval v. Cnty. of San Diego*,
    985 F.3d 657 (9th Cir. 2021) .......................................4, 21, 22, 23, 24

*Short v. Hartman*,
    87 F.4th 593 (4th Cir. 2023) ...................................2, 6, 7, 9, 10, 19, 20

*Silva v. Rhode Island*,
    2021 WL 132685 (D.R.I. Apr. 9, 2021) ............................................14

*Strain v. Regalado*,
    977 F.3d 984 (10th Cir. 2020) ..............................................................1

*Torraco v. Maloney*,
    923 F.2d 231 (1st Cir. 1991)........................................................12, 13

*United States v. Rodriguez*,
    527 F.3d 221 (1st Cir. 2008)...............................................................16

*Zingg v. Grobiewski*,
    907 F.3d 630 (1st Cir. 2018)...................................................2, 3, 15

## INTRODUCTION

There is no question that Shayne Stilphen's death was due to "tragic circumstances." Def.Br. 1. But the tragedy is that this loss was entirely avoidable had defendant-officers Ismael Almeida, Paul Michael Bertocchi, Catia Freire, and Brian Picarello done what any objectively reasonable officer would have done under the circumstances. Thanks to Officer Sean Doolan, we know what that would have looked like. The very first time Officer Doolan saw Mr. Stilphen contorted over his legs, his "attention was just drawn to Shayne" in "a hot second," and he tried to get a response. Appx969(53:13-15). He could not, because it was too late. Mr. Stilphen had been in that same position—folded over his legs, face in his food, unmoving— for nearly an hour while Officers Almeida and Picarello walked by nine times and did nothing. The defendant-officers violated Mr. Stilphen's Fourteenth Amendment right to adequate medical care in response to a serious medical need, and as a result, he died.

In evaluating pretrial detainees' constitutionally inadequate medical care claims, objective deliberate indifference is the appropriate standard. The textual and historical differences between the Eighth and Fourteenth Amendments, the Supreme Court's *Kingsley* decision, and the weight of circuit authority all support that conclusion. The officers largely resist this outcome by parroting the Tenth Circuit's decision in *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020). Def.Br. 24-30, 41-

45. Plaintiff Lynnel Cox's opening brief addressed most of these arguments, Pltf.Br. 26-36, and those that remain fare no better.

Specifically, the officers rely on a cramped reading of *Kingsley* that does not comport with the decision itself. Def.Br. 24-32. The officers also threaten that the objective test would "collapse" the applicable standard into negligence. Def.Br. 32-37. Not so. Indeed, every court to apply an objective test, including the Supreme Court, has expressly acknowledged that it requires more than mere negligence. *See* pp. 9-11, *infra*. Finally, in an attempt to evade the Fourth Circuit's well-reasoned *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023), decision, the officers erroneously suggest that it is wrong to reference cases analyzing the failure to prevent suicide in an analysis of the failure to provide adequate medical care. Def.Br. 46-67.

Unable to escape the reasoning of the five appellate courts that have already applied the objective standard to pretrial detainees' constitutionally inadequate medical care claims, the officers additionally pursue arguments that this standard should not apply in this particular case, and alternatively argue against remand for a new trial even under this standard. This Court should reject both efforts.

As to their attempt to avoid the application of the objective standard here, the officers argue this Court is bound by prior case law. Def.Br. 37-41. But neither *Miranda-Rivera v. Toledo-Davilla*, 813 F.3d 64 (1st Cir. 2016), nor *Zingg v. Grobiewski*, 907 F.3d 630 (1st Cir. 2018), prevent this Court from adopting the

objective standard. *Miranda-Rivera* only reasserted the well-trod statement that the Fourteenth Amendment provides "at least" as much protection as the Eighth Amendment: it had no occasion to determine whether subjective deliberate indifference was the floor or ceiling for Due Process claims because the plaintiff survived summary judgment under the subjective standard. 813 F.3d at 74. And *Zingg*, at the parties' invitation, analyzed the plaintiff's claims under the *Eighth Amendment*. *See* 907 F.3d at 632. Since *Zingg* does not even mention "Due Process," it can hardly be said to have determined the proper Due Process standard.

The officers also repeatedly suggest that applying an objective deliberate indifference standard would be "inappropriate in the factual context of this case." Def.Br. 46-47; *see also id.* at 32-36. But this argument relies on an inaccurate description of the trial record and confuses the order of analysis: facts determine the *outcome under a standard*; they do not determine *which standard applies* in the first place.

The officers' attempts to avoid remand even in the event of the application of the objective standard in this case are no more successful.

First, the shift from the subjective to objective deliberate indifference standard does not open the door to qualified immunity. Whether the unlawfulness of an officer's conduct was clearly established is an objective inquiry in which "[e]vidence concerning the defendant's subjective intent is simply irrelevant." *Eves v. LePage*,

927 F.3d 575, 583 (1st Cir. 2019). Reflecting this reality, this Court and the Seventh and Ninth Circuits have already rejected qualified immunity defenses in the wake of *Kingsley*-related shifts to objective deliberate indifference. *See* pp. 21-22, *infra*. This Court should decline the officers' invitation to instead "follow the example" of the Sixth Circuit's decision in *Lawler ex rel. Lawler v. Hardeman County*, 93 F.4th 919 (6th Cir. 2024). Def.Br. 49. The Sixth Circuit itself has inconsistently applied qualified immunity post-*Kingsley*. *See Hulon v. City of Lansing*, 2025 WL 817492, at *3-4 (6th Cir. Mar. 14, 2025) (recognizing but not reconciling conflict between *Lawler* and *Helphenstine v. Lewis Cnty.*, 60 F.4th 305 (6th Cir. 2023), which "used the new standard to *deny* qualified immunity" (emphasis added)). More importantly, applying qualified immunity under these circumstances would circumvent the purposes of the doctrine and lead to absurd results. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 675-78 (9th Cir. 2021) (noting the proposition that defendants "relied on the subjective deliberate indifference standard in determining how to treat" the plaintiff made "little sense").

Second, the district court's instruction was unquestionably prejudicial. The officers' opposing argument overemphasizes the district court's cursory comments at the close of evidence—which was not a ruling—and underreports the evidence presented at trial. Def.Br. 50-54. Far from suggesting that Mr. Stilphen did not face a medical risk until 4:48 AM, Dr. MacDonald testified that Mr. Stilphen was "at risk

for overdose" from the time he was brought into the station and required frequent monitoring.    Appx449(12:4-7).    Dr. MacDonald was equally clear that such "monitoring" needed to include both "attempts to rouse" and "checking for whether [Mr. Stilphen was] continuing to breathe adequately."    Appx509(72:16-21).    The officers ignore this testimony.    They also ignore that Mr. Stilphen's physical position—the same position Officers Almeida and Picarello repeatedly walked by— immediately alerted Officer Doolan that he needed to intervene.    Appx969(53:13-24); Appx982-983(66:16-67:7).    Notably, their brief fails to even mention that another pretrial detainee, Mr. Cristhian Geigel, died of an overdose at the same station while Officer Almeida was on duty just six weeks prior.    Appx844(92:10-93:6); Appx935(19:5-9).    Given this and all the other trial evidence, a reasonable, properly instructed jury could have found all four of the defendant-officers liable.

To elide this conclusion, the officers point fingers at Mr. Stilphen himself, repeatedly emphasizing that he ingested additional drugs at the station while alleging that he did so surreptitiously.    Def.Br. 1-2, 12-15, 33, 47.    Critically, however, an act of self-harm does not negate the government's obligation to provide constitutionally adequate medical care.    To hold otherwise would absolve the government of all responsibility for carceral suicide attempts.    That is not and cannot be the law.    At bottom, the officers' attempts to blame Mr. Stilphen rest on the "stigma and suspicion" that people living with opioid use disorder "frequently face."    *See Oak*

*Hill Hometown Pharm. v. Dhillon*, 418 F. Supp. 3d 124, 133 (S.D. W. Va. 2019). This Court should not sanction such an approach and should instead vacate and remand for a new trial.

## ARGUMENT

### I. Objective deliberate indifference is the proper standard for pretrial detainees' Fourteenth Amendment inadequate medical care claims.

The officers dismiss Ms. Cox's position that the objective standard is the proper standard for pretrial detainees' Fourteenth Amendment inadequate medical care claims as "sweeping," "procrustean," "expansive," and "far-reaching." Def.Br. 4-5, 27, 29, 40, 45. But linguistic flourishes cannot hide the reality that five Courts of Appeals have already reached the conclusion that Ms. Cox urges. *See Lara-Grimaldi v. Cnty. of Putnam*, 132 F.4th 614, 631-32 (2d Cir. 2025); *Short v. Hartman*, 87 F.4th 593, 609 (4th Cir. 2023); *Brawner v. Scott Cnty.*, 14 F.4th 585, 606-07 (6th Cir. 2021); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). There are good reasons for this Court to become the sixth. *Cf.* Pltf.Br. 25-36.

#### A. The scope of *Kingsley*'s reasoning is broader than the officers' retelling.

The officers describe *Kingsley*'s use-of-force facts at length. Def.Br. 24-28. To state the obvious, Ms. Cox does not disagree that *Kingsley* addressed a use-of-

force claim.[1]  However, *Kingsley*'s reasoning makes clear that, like most Supreme Court decisions, it has broader application.  The officers' reading erroneously "reduces *Kingsley*'s reasoned judgment to an arbitrary fiat." *Short*, 87 F.4th at 610.

In perhaps the most erroneous reduction, the officers attempt to minimize *Kingsley*'s discussion of the prison-conditions case *Bell v. Wolfish*, 441 U.S. 520 (1979), to "a citation." Def.Br. 31.  But *Bell* was not a single sentence in *Kingsley*; its repeated citation was, in fact, the source of *Kingsley*'s test.  As *Kingsley* explained, it was *Bell* and other precedents that "led [the Court] to conclude" that "the appropriate standard" was an objective one.  576 U.S. 389, 397 (2015).  Indeed, *Kingsley* reasoned that "*Bell* itself shows" that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398.[2]  In the face of this analysis, to narrowly cabin *Kingsley*'s reasoning to excessive-force claims alone requires too blind an eye.

---

[1] Ms. Cox *does* disagree with the import the officers give *Kingsley*'s reasonableness factors, Def.Br. 28-29, considering the Court itself highlighted such factors were not "exclusive" and instead were provided only for "illustrat[ive]" purposes. *Kingsley*, 576 U.S. at 397.

[2] *Kingsley*'s repeated citation to *Bell* and lack of citation to *Farmer v. Brennan*, 511 U.S. 825 (1994), should come as no surprise. *Contra* Def.Br. 30.  *Kingsley* and *Bell* considered pretrial detainees' Fourteenth Amendment rights, while *Farmer* considered convicted prisoners' Eighth Amendment rights.

Appropriately applying *Kingsley*'s reasoning to other kinds of pretrial detainee due process claims does not "arrogate a power that the Supreme Court has stated lies only with itself." Def.Br. 31. Although the officers point to *Agostini v. Felton*, 521 U.S. 203, 237 (1997), that case stands only for the unremarkable proposition that the Supreme Court alone can overrule its own binding precedent.

Here, there is no directly controlling Supreme Court precedent to overrule because that Court has only stated that Fourteenth Amendment protections for pretrial detainees' medical care claims are "*at least as great as* the Eighth Amendment protections available to a convicted prisoner." *MGH v. City of Revere*, 463 U.S. 239, 244 (1983) (emphasis added); *see also City of Canton v. Harris,* 489 U.S. 378, 388 n.8 (1989) (noting "this Court has never determined what degree of culpability must be shown before … a denial of the due process right to medical care while in detention [ ] is established" and concluding "[w]e need not resolve here the question left open in *Revere*"); *Brawner*, 14 F.4th at 596 ("The Supreme Court has not held that *Farmer*'s subjective standard applies to Fourteenth Amendment pretrial detainee-medical-care claims."). As five Courts of Appeals have already demonstrated, appellate courts are therefore free to—and should—apply *Kingsley* to pretrial detainees' constitutionally inadequate medical care claims.

## B. An objective standard comports with the courts' admonition that Due Process claims require more than negligence.

The officers join a line of defendants to argue against the objective standard because it purportedly risks imposing constitutional liability for negligent behavior. Def.Br. 5, 22, 36-37. This Court should join the line of courts that have rejected this argument. *See, e.g.*, *Miranda*, 900 F.3d at 353 (noting "defendants here worry that an objective-reasonableness standard will impermissibly constitutionalize medical malpractice claims, because it would allow mere negligence to suffice for liability" before concluding a "careful look at *Kingsley* [] shows that this is not the case"); *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (noting "defendants argue that using an objective standard to measure deliberate indifference … risks that officials that act with mere negligence will be held liable for constitutional violations" before concluding the standard would not do so).

Indeed, every court that has adopted objective deliberate indifference has done so with the explicit acknowledgement that it imposes something more than mere negligence. *See Kingsley*, 576 U.S. at 395-98; *Short*, 87 F.4th at 611-12; *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *Miranda*, 900 F.3d at 353; *Brawner*, 14 F.4th at 596-97; *Darnell*, 849 F.3d at 36. That makes sense. To begin, the objective test still requires that a defendant intend the physical act at issue. For example, *Kingsley* contrasted "a push that leads to a fall, or the shot of a Taser that leads to the stunning of its recipient"—which could lead to liability—with situations

where "an officer's Taser goes off by accident or [] an officer unintentionally trips and falls on a detainee"—which could not.  576 U.S. at 395-96.  This analysis extends to inaction as well.  For example, "if the claim relates to inadequate monitoring of the cell, the inquiry would be whether the officer chose the monitoring practices rather than, for example, having just suffered an accident or sudden illness that rendered him unconscious and thus unable to monitor the cell."  *Castro*, 833 F.3d at 1070; *see also Miranda*, 900 F.3d at 354 (contrasting the decision not to send a detainee to the hospital with a situation where the officers "forgot[]" the detainee was in jail "or mixed up her chart with that of another detainee").

What is more, the objective test requires a demonstration that "is a lower bar than intent, but a higher bar than negligence."  *Short*, 87 F.4th at 611; *see id.* at 611-12 (holding it is "not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee" and instead "the plaintiff must show that the defendant should have known of [the medical] condition and th[e] risk, and acted accordingly"); *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024) (holding pretrial detainee "must prove that the defendants did not take reasonable available measures to abate the risk of serious harm … even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious" (emphasis omitted)); *Castro*, 833 F.3d at 1071 (holding the test under *Kingsley*

requires "a pretrial detainee who asserts a due process claim for failure to protect to prove more than negligence but less than subjective intent—something akin to reckless disregard"); *Darnell*, 849 F.3d at 35 (holding a pretrial detainee must prove that the defendant "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety").

The specter of negligence should therefore pose no hurdle to this Court's adoption of the objective deliberate indifference standard.[3]

### C. *Short*'s reference to pretrial detainees' failure to prevent suicide claims is appropriate.

The officers' final attempt to distinguish *Short* rests on their assertion that a court's analysis of pretrial detainees' claims regarding a failure to prevent suicide is entirely irrelevant to pretrial detainees' inadequate medical care claims. Def.Br. 46-47. This argument has no grounding in the law. Nothing in *Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir. 1991), so limits its holding, and for good reason: as the

---

[3] Notably, Ms. Cox satisfies this standard here. There is no question defendant-officers' inaction was voluntary: they neither forgot to conduct their cell checks, nor did anything physically prevent them from rousing Mr. Stilphen or otherwise intervening during the more than a dozen times that they walked by his cell. And this inaction in the face of Mr. Stilphen's obvious condition ignored what the defendant-officers should have known was an excessive risk to his safety. Pltf.Br. 44-55.

First Circuit has explained, the extension of constitutional protections "from *physical* health needs … to *mental* health needs is appropriate because … there is no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Torraco v. Maloney*, 923 F.2d 231, 234-35 (1st Cir. 1991) (emphasis in original) (citation and quotation marks omitted). It is true that claims involving suicide attempts have focused on whether the officers reasonably should have known about the detainee's suicidal tendencies for the straightforward reason that outside of this knowledge, there would be no way to determine that a person was at risk of a suicide attempt. But there are other ways to determine that an officer should have known that a person's physical condition posed a serious risk to their health, including visual observation. There is therefore nothing erroneous about *Short*'s reliance on a standard articulated in a case about a failure to prevent suicide.

At the same time, the officers' discussion of suicide claims contrasts with an important undercurrent of their argument. The officers mention no fewer than ten times that Mr. Stilphen apparently ingested additional drugs in Cell 19. Def.Br. 1-2, 12-15, 20, 33, 51. The implication appears to be that because Mr. Stilphen was responsible for actions that contributed to his overdose, the officers cannot have any responsibility for his death. The logical outgrowth of this argument would be that government actors can never be liable for detainee suicides, which only occur when

the detainees themselves take actions to attempt suicide. But this Court has long been clear that is not the law. *See Penn v. Escorsio*, 764 F.3d 102, 112-13 (1st Cir. 2014) (affirming denial of qualified immunity where pretrial detainee attempted suicide); *Torraco*, 923 F.2d at 234 (considering liability of prison officials where plaintiff's son committed suicide while in custody). When the government takes a person into custody, the government deprives them of their freedom of movement, and they can no longer seek medical care for themselves. The government therefore has a constitutional obligation to protect them from serious risks to their health, including risks of self-harm. *Cf. Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). It is only through the inappropriate lens of stigma that this could wrongly be read to exclude the ingestion of drugs.

## II. The objective deliberate indifference standard applies to this case.

Because the objective deliberate indifference standard is the proper standard for pretrial detainees' Fourteenth Amendment inadequate medical care claims, it applies here. This Court should reject the officers' arguments that it cannot apply in this Circuit or that it should not apply in this case.

### A. *Miranda-Rivera* and *Zingg* did not address the boundaries of the Fourteenth Amendment's Due Process protections for pretrial detainees.

As numerous district courts within the First Circuit recognize, this Court has yet to define the scope of the Fourteenth Amendment's Due Process protections for

13

pretrial detainees post-*Kingsley*.  *See, e.g.*, *Dunn v. Barry,* 2021 WL 1967883, *9 n.31 (D. Mass. May 17, 2021) (noting the "First Circuit has yet to weigh in on the debate" about which standard to apply); *Gomes v. DHS*, 460 F. Supp. 3d 132, 147 (D.N.H. 2020) ("In the absence of binding, post-*Kingsley* authority, district courts within the First Circuit do not agree whether the subjective prong of a deliberate indifference claim still applies to due process claims brought by civil detainees."); *Silva v. Rhode Island*, 2021 WL 132685, at *4 (D.R.I. Apr. 9, 2021), report and recommendation adopted, 2021 WL 1734448 (D.R.I. May 3, 2021) (noting "[s]ince *Kingsley* [ ], it has been unclear" which standard to apply).  Given the lower courts' continued lack of clarity, it is especially important this Court do so now.

The officers' suggestion that this Court has already decided the applicable standard rests on a flawed reading of *Miranda-Rivera* and *Zingg*.  Def.Br. 3, 5-7, 22, 37-41.  It is not simply that the parties did not brief the impact of *Kingsley* in either case, though they did not.  More fundamentally, it is that neither case addressed the limits of Due Process protections for pretrial detainees, *irrespective* of *Kingsley*'s impact.

*Miranda-Rivera* expressly noted "[t]he boundaries of [the Due Process] duty have not been plotted exactly."  813 F.3d at 74.  And *Miranda-Rivera* itself did nothing to further this plotting.  Instead, it merely acknowledged, as courts have done for decades, that "it is clear" Due Process protections "extend at least as far as

the protection that the Eighth Amendment gives to a convicted prisoner." *Id.* Finding that the plaintiff satisfied even this less-protective standard, there was no reason to pursue whether this represented the ceiling or the floor of the Due Process standard. It defies logic to suggest that *Miranda-Rivera* sub silentio interpreted *Kingsley* not to apply to inadequate medical care claims simply because it did not reference the decision in its inadequate medical care analysis where the objective standard would have had no impact on its holding.

*Zingg* likewise does not support the officers' assertion that "the First Circuit has already rejected Plaintiff's interpretation of *Kingsley*." Def.Br. 37. Based on the plaintiff's pleadings, briefing, and oral argument, *Zingg* analyzed and addressed the Eighth Amendment's right to be free from cruel and unusual punishment. 907 F.3d at 633. The opinion mentions the Eighth Amendment ten times and never once refers to the Due Process Clause. Although this was legally incorrect given the plaintiff's status as a pretrial detainee, that error does not change that an opinion that does not even mention the Due Process Clause cannot be read to define the contours of that clause's protections.

The officers suggest that Ms. Cox's "arguments about *Kingsley* and *Miranda-Rivera* rest on a fatal contradiction." Def.Br. 40. They do not. Ms. Cox's argument regarding *Kingsley* is that its analysis "offers a sound reason for believing" that First Circuit panels that had expressly defined the scope of the Fourteenth Amendment's

protections for pretrial detainees pre-*Kingsley* "would change [their] collective mind" "in light of [the] fresh developments." *United States v. Rodriguez*, 527 F.3d 221, 224-25 (1st Cir. 2008) (citations and quotation marks omitted). That is entirely consistent with *Miranda-Rivera* and *Zingg*, neither of which had occasion or need to "change its [] mind," given that they expressed no opinion regarding the limits of the Due Process Clause's protections. *See* pp. 14-15, *supra.*

### B. It is appropriate and necessary to apply the objective standard to the facts of this case.

Irrespective of whether the objective standard generally applies to pretrial detainees' inadequate medical care claims—it does—the officers repeatedly urge that this standard should not be applied "in the factual context of this case." Def.Br. 5, 21-22, 32-36. Their arguments misstate the facts and the law.

As to the facts, each of the "three considerations" the officers describe ignores crucial evidence presented to the jury. Def.Br. 33-35.

First, the officers allege Mr. Stilphen "actively worked against the surveillance protocols" by "surreptitiously" ingesting additional drugs in his cell. Def.Br. 33. Yet Mr. Stilphen's struggle to stand was evident throughout the booking process. *E.g.*, Appx1224(3:00-3:30); Appx630(48:4-8); Appx708(126:6-9, 126:20-22); Appx710(128:6-17); Appx1226(6:36-12:20). Officers Bertocchi and Freire needed to help him stand seven times across the span of five minutes during fingerprinting, and he repeatedly slumped down the wall during his booking photos.

Appx1226(11:15, 11:39, 12:23, 12:55, 13:26, 15:05, 16:08, 18:26, 20:11, 20:47); Appx712(130:12-17). Mr. Stilphen's contorted position in Cell 19 was visible when Officers Almeida and Picarello walked by at 3:33 AM and 4:43 AM, respectively. Appx871(119:15-19); Appx1225 (Ex. 2-c at 2:50-3:17); Appx1228 (Ex. 5-c at 3:08-10); Appx797(45:4-10); Appx1225 (Ex. 2-e at 13:12-13:47); Appx1228 (Ex. 5-e at 13:14-43). And Mr. Stilphen's unmoving, contorted position remained visible throughout the nine times Officers Almeida and Picarello walked by his cell between 4:48 AM and 5:39 AM. Appx1225(Exs. 2-e at 25:36-26:05; 2-f at 5:59-6:18, 6:46-6:55, 10:15-10:34, 20:50-55; 2-g at 5:10-31, 7:12-29, 8:52-10:38). What is more, if Mr. Stilphen's drug-use is now clear enough in the video evidence for the officers to blame him for his own death, it was just as clear on July 14, 2019, to prompt them to do something about Mr. Stilphen's condition when that same video was cast into the booking office. Appx833-34(81:3-82:5). The import of the purportedly surreptitious nature of Mr. Stilphen's drug use is further undermined by the testimony of both Officers Almeida and Picarello regarding their knowledge that overnight detainees often hide drugs and use them in their cells. Appx893(141:21-23); Appx895(143:7-10); Appx798(46:15-18).

Second, the officers suggest that Mr. Stilphen's "acute medical emergency" left them "with little time to intervene." Def.Br. 33. To begin, Dr. MacDonald made clear that the time to help protect Mr. Stilphen encompassed *not just* the "roughly

hour long period" between 4:48 and 5:51 AM, Def.Br. 34, *but also* from the moment Mr. Stilphen was brought into the booking area at 1:58 AM with symptoms of opioid intoxication. *See* pp. 4-5, *supra*. Yet even focusing on the period from 4:48 AM when Dr. MacDonald's unrebutted expert testimony identified that Mr. Stilphen progressed from opioid intoxication with a risk of an overdose into an overdose, Appx478-79(41:3-42:8), there remained nearly an hour in which the administration of Narcan still could have saved his life, Appx479(42:2-8). This is nowhere near the kind of "split second" decisions this Court has found present a need for additional deference to officers in use-of-force cases. *Compare with Mlodzinski v. Lewis*, 648 F.3d 24, 29 (1st Cir. 2011) (seven to ten minutes do not constitute split-second judgment warranting additional deference); *McKenney v. Mangino*, 873 F.3d 75, 84 (1st Cir. 2017) (same for six minutes). That is particularly so given that Officers Almeida and Picarello walked by Mr. Stilphen's cell a combined nine times during this period. *See* p. 17, *supra*. That both officers never attempted to rouse Mr. Stilphen during any of these nine instances was not due to a lack of time.

Nor was their failure to intervene related to the incident with Mr. Perry. Def.Br. 34. This is the officers' third proffered "consideration," and as during trial, the officers devote much space to Mr. Perry in their brief. Def.Br. 3, 16, 54. Yet they fail to mention that Mr. Perry left the station at 4:02 AM, approximately an hour

and a half before Mr. Stilphen died,[4] during which time Officers Almeida and Picarello walked by Mr. Stilphen thirteen times. Appx876-77(124:4-125:5); Pltf.Br. 13-16. Nor do they mention the defendant-officers' lack of involvement with Mr. Perry: Officer Freire had left the station beforehand, Appx634(52:10-11); Officer Bertocchi was "ushered out" of the area of the Perry incident, Appx776(24:11-12); Officer Picarello was told to, and did, stay away from the area of the Perry incident, Appx817(65:1-11); and Officer Almeida testified that he "wasn't involved in the Perry incident," Appx872(121:5-22).

As a legal matter, while these facts are relevant to the *outcome* of the objective deliberate indifference standard's application—which Ms. Cox satisfies—they are irrelevant to whether it *applies* in the first place. The legal question of what standard applies is dictated by the text and history of the Due Process clause, the reasoning of *Kingsley*, and the weight of circuit authority. Indeed, each of the five circuits to have adopted *Kingsley* for inadequate medical care claims did so without regard for or discussion of the facts of the specific case. *See, e.g.*, *Short* 87 F.4th at 604-12; *Darnell,* 849 F.3d at 32-36; *Brawner*, 14 F.4th at 591-97; *Miranda*, 900 F.3d at 350-54; *Gordon*, 888 F.3d at 1122-25. It is only after the court "determined that the proper test for pretrial detainees' claims under the Fourteenth Amendment is an

---

[4] The officers claim that Mr. Stilphen died after he was transported to the hospital. Def.Br. 19. But BPD's own investigating officer concluded Mr. Stilphen "drew his last breath" in Cell 19 at 5:39 AM. Appx557(120:1-22).

objective one," that they turned to the facts to determine whether that test was satisfied. *Short*, 87 F.4th at 612; *see also Darnell*, 849 F.3d at 36-39; *Brawner*, 14 F.4th at 597-601; *Miranda*, 900 F.3d at 354. By muddling the first and second step, the officers put the cart before the horse. This Court should not follow suit.[5]

### III. This case should be remanded for a new trial under the objective deliberate indifference standard.

Because the officers are not immune from liability and Ms. Cox was prejudiced by the erroneous jury instruction, the officers' arguments that this case should not be remanded for a new trial under the objective standard are unavailing.

### A. The officers are not entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials are immune from damages claims unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Eves*, 927 F.3d at 582-83 (citations and quotation marks omitted). Until now, the

---

[5] *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), is not to the contrary. Def.Br. 32, 36. In stating that the "[r]ules of due process are not [] subject to mechanical application in unfamiliar territory," *Lewis* merely explained that applying the same standard to different facts may lead to different outcomes because of those factual differences. 523 U.S. at 850. And while *Lewis* described intentional conduct as being on one end of the culpability spectrum, it further explained that "culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls." *Id.* at 849 (citations and footnote omitted). The Court "expressly recognized the possibility that some official acts in this range may be actionable under the Fourteenth Amendment," including with respect to medical-care claims. *Id.* at 849-50.

officers had only addressed qualified immunity in a one-sentence footnote during summary judgment briefing, which the district court rejected "[b]ecause the law on denial of medical care has long been clear in the First Circuit, and because the argument is woefully underdeveloped." ECF 104 at 14 n.8 (citations and quotation marks omitted). This Court should similarly reject the officers' qualified immunity argument here.

The explicit adoption of the objective standard does not lead to a different conclusion. Indeed, the district court determined that a pretrial detainee's right to constitutionally adequate medical care was clearly established for the purposes of qualified immunity *irrespective* of whether an objective or subjective standard applied. *See* ECF 104 at 10-11 (noting "this court need not attempt to resolve" which standard applies). For good reason. The "qualified immunity inquiry focus[es] on the objective legal reasonableness of an official's acts," *Eves*, 927 F.3d at 583 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998)) (quotation marks omitted), and "[e]vidence concerning the defendant's subjective intent is simply irrelevant" to the clearly established step of the inquiry, *id.* (quoting *Crawford-El*, 523 U.S. at 588).

In the wake of *Kingsley*, several circuits have therefore held that "lack of notice regarding the mental state required to establish liability" for a Due Process claim "has no bearing on the [qualified immunity] analysis." *Sandoval*, 985 F.3d at

21

675.  On remand from the Supreme Court, the Seventh Circuit in *Kingsley* itself rejected the defendants' qualified immunity arguments.  801 F.3d 828, 832-33 (7th Cir. 2015).  The Ninth Circuit did the same in response to a claim regarding inadequate medical care.  *See Sandoval*, 985 F.3d at 675.  And this Court already rejected the suggestion that the difference between a subjective and objective standard triggers qualified immunity within the context of an excessive-force claim.  *See Miranda-Rivera*, 813 F.3d at 72-73.

Notwithstanding—and without even citing—these cases, the officers encourage this Court to "follow the example" of the Sixth Circuit's application of qualified immunity in *Lawler*.  Def.Br. 49.  There are several reasons not to do so.  To begin, the Sixth Circuit itself has been inconsistent in its application of qualified immunity post-*Kingsley*.  Contrary to *Lawler*, the *Helphenstine* panel rejected defendants' qualified immunity argument despite the shift to objective deliberate indifference.  60 F.4th at 326-27.  Where a sister circuit has failed to resolve its own internal inconsistencies, *see Hulon*, 2025 WL 817492, at *3-4, this Court should be wary of following its lead.

More importantly, the application of qualified immunity under these circumstances would represent a "radical reimagination" of the defense that "would produce results directly contrary to the purposes served by the doctrine."  *Sandoval*, 985 F.3d at 676.  Qualified immunity was designed to shield officers when they

behave reasonably. *See id.* at 676-77. Yet applying qualified immunity based on a shift from a subjective to objective standard would require plaintiffs "to satisfy a standard under which [officers] would be protected from liability—no matter how *un*reasonable their conduct—as long as they did not *subjectively appreciate* that their actions" put the pretrial detainee "at a substantial risk of suffering serious harm." *Id.* at 677 (emphasis in original). This "extraordinary proposition" would transform the defense into "one that provides immunity to defendants *precisely because* they were so incompetent that they did not understand the patent unreasonableness of their conduct as already established by law." *Id.* (emphasis in original).

What is more, applying qualified immunity here would lead to absurd results. The logic of the clearly established standard is that officers should have the opportunity to change their behavior to align with the law. "But how would an official who believes any claims against him would be tried under a subjective deliberate indifference standard act any differently than one who knows that an objective unreasonableness standard applies?" *Id.* The shift from the subjective to objective standard would impact "on-the-ground actions" only if one assumes that officers (1) can simultaneously believe their behavior is objectively unreasonable and subjectively reasonable, and (2) will continue to engage in what they recognize is objectively unreasonable behavior based on their reliance that they will be judged on a subjective standard. *Cf. id.* at 677-78. "[T]o speak the thought is to recognize

that it makes little sense." *Id.* at 677. This Court should refuse to endorse such a "dubious proposition." *Kingsley,* 801 F.3d at 832-33.

### B. The district court's instructions prejudiced Ms. Cox.

Although the officers now downplay the import of the jury instructions, Def.Br. 50-54, they took a different approach during closing argument. There, they echoed the language of the subjective deliberate indifference instruction that deliberate indifference means "affirmatively choosing to do the wrong thing or doing nothing" no fewer than five times. Appx1099(38:8-9); Appx1101(40:10-12, 40:24-25); Appx1116(55:16-56:1); Appx1128(67:5-6); *see also* Appx322(9:11-13) (instruction); Appx1175(114:14-24) (instruction). As described in the opening brief, this instruction prejudiced Ms. Cox because "it could have affected the result of the jury's deliberation." *La Plante v. Am. Honda Motor Co.*, 27 F.3d 731, 737 (1st Cir. 1994); Pltf.Br. 44-55. The officers' alternative conclusion rests on an overreading of the district court's brief statement at the close of evidence and an underreading of the trial record.

As to the first, the officers place much stock in the district court's oral remarks when they moved for a directed verdict. They expand the Court's two-sentence statement (recited in full at Def.Br. 21) into "essentially [a] ruling" as to Ms. Cox's failure to meet her burden, at least with respect to Officers Bertocchi and Freire.

24

Def.Br. 50-51.  The district court made no such ruling.  Its statement was neither a binding order nor a guaranteed outcome.

The remainder of the officers' prejudice argument rests on a cherry-picked version of the trial record.  For example, the officers limit their analysis to the final hour of Mr. Stilphen's life based on their allegation that this was required by Dr. MacDonald's testimony.  Def.Br. 2.  Yet Dr. MacDonald testified that Mr. Stilphen was "at risk for overdose" from the time he was brought into the booking area, Appx449(12:4-7), meaning he required appropriate monitoring including frequent attempts to rouse and checks that he was still breathing, Appx509(72:16-21).[6]  This was consistent with the BPD training the officers received, which taught them that people who were really high could progress to an overdose, and as a result, "[e]ven if a person is really high and not overdosed, they should not be left alone."  Appx528-29(91:11-92:4);  Appx530-31(93:16-94:9).  Accordingly, the relevant period was the entirety of Mr. Stilphen's time at the station.  That time includes the multiple instances when Officers Freire and Bertocchi observed Mr. Stilphen unable to stand throughout booking and collapsing into the hinged position in Cell 19, but still failed to seek medical attention, conduct

---

[6] From the time Mr. Stilphen was placed in Cell 19 until the time Officer Doolan rushed into his cell, *no* officer touched him, let alone "gently."  *Compare with* Def.Br. 2.

appropriate monitoring, or even inform anyone of Mr. Stilphen's condition. Pltf.Br. 52-54.

Similarly, the officers' suggestion that "[i]t is no exaggeration to say that Officer Picarello's liability rests on one or at most two cell checks he conducted" is incorrect. Def.Br. 53. Officer Picarello observed Mr. Stilphen at booking. Appx786(34:9-17). He walked past Mr. Stilphen's cell five times, including twice after Mr. Stilphen began overdosing and once when he placed a food tray in the slot of Mr. Stilphen's door the minute before Mr. Stilphen's last breath. Appx1225 (Exs. 2-c at 17:33-52, 2-d at 17:19-30, 2-e at 13:12-47, 2-f at 20:50-58, 2-g at 8:52-10:38). While the officers emphasize Officer Picarello's relative inexperience, he had recently received the training described above about the importance of not leaving a person who is very high alone, yet proceeded to do exactly that.

Finally, the single paragraph regarding Officer Almeida tucked at the end of the officers' brief is essentially a concession that the incorrect jury standard prejudiced Ms. Cox with respect to his liability.[7] That Officer Almeida had seen Mr. Stilphen in the contorted position "throughout the morning," Def.Br. 54, and yet continued to do nothing, is especially significant under the objective standard given that Officer Doolan reacted as soon as he saw Mr. Stilphen in that same position

---

[7] The officers do not even mention Officer Almeida in their summary of this argument. Def.Br. 23.

specifically *because* of his position.  Appx982-83(66:16-67:7).  Nor is the officers'
reference to Mr. Perry helpful in light of Officer Almeida's testimony that he
"wasn't involved in the Perry incident," Appx872(121:5-22), and in all events,
Mr. Perry was taken from the station nearly ninety minutes before Mr. Stilphen died,
during which time Officer Almeida passed Mr. Stilphen's cell nine times.  Appx1225
(Exs. 2-d at 19:53-20:11, 28:30-40; 2-e at 25:36-26:05; 2-f at 5:59-6:18, 6:46-6:55,
10:15-34, 20:50-55; 2-g at 5:10-5:31, 7:12-7:29).  As telling is the information
omitted from this single paragraph—namely, any reference to Cristhian Geigel
dying six weeks earlier in the same station when Officer Almeida was on shift and
responsible for cell checks.  Appx844-45(92:10-93:6).  It is not credible to deny that
a reasonable jury could have reached a different outcome were Officer Almeida's
subjective beliefs not dispositive.

## CONCLUSION

For the aforementioned reasons and the reasons articulated in Ms. Cox's
opening brief, this Court should vacate and remand for a new trial.

Respectfully submitted,

/s/ Alexandra D. Valenti

Jessie J. Rossman (No. 1161236)
Adriana Lafaille (No. 1150582)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
alafaille@aclum.org

Robert Frederickson III (No. 1207720)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
rfrederickson@goodwinlaw.com

Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

Rohiniyurie Tashima (No. 1215338)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
rtashima@goodwinlaw.com

*Counsel for Plaintiff-Appellant*

October 6, 2025

28

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 6,493 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

Dated: October 6, 2025

*/s/ Alexandra D. Valenti*
Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I, Alexandra D. Valenti, hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on October 6, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 6, 2025

*/s/ Alexandra D. Valenti*
Alexandra D. Valenti (No. 1207992)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 459-7351
avalenti@goodwinlaw.com

*Counsel for Plaintiff-Appellant*